NARRAGANSETT RACING ASSOCIATION INC. AND WALTER E. O'HARA *vs.* FRANCIS J. KIERNAN *et al.*

OCTOBER 15, 1937.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

PER CURIAM. This is a petition for a writ of *certiorari* to have reviewed and quashed, as illegal, the record of the hearing before the Division of Horse Racing of the State of Rhode Island upon certain charges against these petitioners and the record of the decision of that body, dated September 17, 1937, suspending the license of the petitioner, Narragansett Racing Association, Inc., and ordering the removal by it of the petitioner, O'Hara, as president and managing director of said Narragansett Racing Association, Inc.

The respondents, Francis J. Kiernan, chief, James H. Hagan, Jr., superintendent of the bureau of licenses, and Thomas F. Kane, superintendent of the bureau of inspection, are the appointed official members of the division of horse racing of the state of Rhode Island, hereinafter called "the division." Upon them certain powers are conferred, by and in accordance with chapter 2086, public laws 1934, as amended by chapter 2250, public laws 1935, to hear and determine charges preferred against a licensee thereunder, to suspend and revoke for cause such licensee's license and for cause to order the removal by the licensee of officials employed by it. The petitioner, Narragansett Racing Association, Inc., hereinafter referred to as "Narragansett", is the holder of a Class A license issued by said division under the provisions of said chapter 2086 as amended, to conduct horse racing upon specified dates during the year 1937; and petitioner, Walter E. O'Hara, is the president and managing director of said Narragansett.

Upon the filing of the petition in this court, a citation was issued to the respondents, returnable October 4, to show cause why the writ of *certiorari,* as prayed for, should not be issued. On October 4, the return day thereof, the petitioners appeared with their counsel, as did the respondents, the latter being represented under the law by the attorney

general. When the case was called for hearing, Michael DeCiantis, Esq., as personal counsel for His Excellency, Robert E. Quinn, Governor of the State of Rhode Island, represented to the court that the governor requested leave, as a friend of the court, to file a brief and to argue through his attorney certain questions of law involved. A motion to that effect was made by Mr. DeCiantis and, in the absence of any objection, it was granted, his brief was filed, and argument by him, representing the governor, was later heard.

Thereupon the respondents produced, through the attorney general, a record of the hearing before them, which was represented to be the record of the division as prayed for by the petition for the writ, and they requested that it be treated as if it were returned on a writ of *certiorari* which had been duly issued and served. By agreement of all counsel, including counsel for the governor, it was then stipulated in open court that the record, so produced, was the one which would have been returned if the writ had been issued and served and that the merits of the case should be heard and determined thereon. Accordingly, the case proceeded to hearing and is before us now upon the merits of the petition and its prayer for relief.

It appears by the petition and record that counsel for Narragansett was served, on September 9, 1937, with a copy of six charges preferred by the division, as grounds upon which they should suspend or revoke the license of Narragansett. This notice was served upon counsel for Narragansett as he was leaving a hearing in this court upon a petition for *certiorari* in the previous case, *Narragansett Racing Association, Inc. and Walter E. O'Hara* v. *Francis J. Kiernan et al.*, which we have recently decided. It called upon Narragansett to appear before the division at one o'clock, p. m., on the next day, September 10, and to show cause why its license to conduct horse racing should not be suspended or revoked. These charges and notice read as follows:

"Narragansett Racing Association, Inc.

"You are hereby notified and summoned to appear before the Division of Horse Racing for the State of Rhode Island and Providence Plantations at a hearing to be held in the office of said Division in the State Office Building, Providence, Rhode Island, on Friday, the 10th of September, A. D. 1937, at one o'clock P. M. daylight saving time, to show cause why the license heretofore issued to you to conduct a racing meeting in said state should not be suspended or revoked.

"The Division of Horse Racing charges:

"1. That the Narragansett Racing Association, Inc., through its duly authorized agent and agents, did unlawfully appropriate to its own use and did unlawfully use large sums of moneys belonging to the holders of winning tickets who had failed to cash the same.

"2 That the Narragansett Racing Association, Inc., by and through its agents, has continuously, since September 3, 1937 to date, neglected and failed to comply with the order of said Division of Horse Racing issued September 3, A. D. 1937, to remove forthwith Walter E. O'Hara as an employee and official of said Narragansett Racing Association, Inc., and said Walter E. O'Hara, purporting and claiming to speak for the said Narragansett Racing Association, Inc., has openly defied said Division and its said order.

"3. That the Narragansett Racing Association, Inc., by and through its agents did, on, to wit, the 5th and 6th days of September, A. D., 1937, interfere with, prevent and hinder the duly authorized agents of the said Division from visiting, investigating and placing expert accountants in the offices of the said association and seeing the books and documents showing receipts and disbursements of said association in violation of Section 7 of Chapter 2086 of the public laws of 1934.

"4. That the said Narragansett Racing Association, Inc., by and through its agents did, on, to wit, the 4th

day of September, A. D., 1937, on two separate occasions, refuse admission to the Secretary of said Division to the office of the said association in violation of Rule 15 of said Division.

"5 That the Narragansett Racing Association, Inc. did, on, to wit, the 28th day of August, A. D. 1937, publicly state that he, the said Walter E. O'Hara, could buy the Chief of the Division of Horse Racing for a dollar and a half ($1.50), meaning and intending to convey the impression that the Chief of said Division was dishonest and corrupt.

"6. That the Narragansett Racing Association, Inc. by and through its agents has encouraged and allowed at the track, trainers and stable men who have created disturbances and public nuisances and Walter E. O'Hara its former Managing Director employs and keeps one Curran, a trainer, who continually engages in brawls and disturbances at the track and he the said Walter E. O'Hara with the said Curran was involved in an altercation with one Roles, on September 4, 1937 at the Narragansett Race Track, and he the said Walter E. O'Hara ordered said Roles off said track without reason and forbade his return.

"R. I. Division of Horse Racing
"(Signed)          Francis J. Kiernan
"Chief of Division."

At the appointed time on September 10, counsel for the respondents (petitioners here) moved for a continuance of the hearing to permit a reasonable time in which to prepare their defense. After counsel notified the division that they were authorized by a justice of the superior court to inform the division that he would entertain a proposed bill in equity to enjoin the hearing, if a reasonable time were not given the respondents to prepare, the motion for a continuance was granted, and the hearing was continued to September 14th.

On the next day, September 11, the governor preferred two additional charges against these petitioners who were served with a copy thereof, together with a notice that these charges would be heard before the division of horse racing on September 14. These two charges read as follows:

"1. I am informed that the order of the Racing Division removing Walter E. O'Hara as an official or employee of the Narragansett Racing Association has been reversed by the Supreme Court. He, therefore, is acting as president and managing director of the Narragansett Racing Association. I, therefore, prefer the following charges, and ask the division to revoke the license of said Narragansett Racing Association on the ground that its president and managing director has in the public prints called the Governor of the State of Rhode Island, to wit, Robert E. Quinn, a 'G.. D.... Liar.' Upon the further ground that said O'Hara has on diverse occasions called the Lieutenant-Governor, the Chief of the Racing Division, the United States district attorney, the State Racing Steward and other officials and respected citizens of this State, foul, abusive, and slanderous names.

(Signed)    Robert E. Quinn,<br>Governor."

"2. I have been informed that the order of the Division removing Walter E. O'Hara as an official or employee of the Narragansett Racing Association has been quashed by the Supreme Court. I, therefore, present the following charge against Walter E. O'Hara and ask for his removal by reason thereof: The said Walter E. O'Hara in the public prints has called the Governor of the State of Rhode Island, to wit, Robert E. Quinn, a 'G. . D.... Liar.' "

(Signed)    Robert E. Quinn, Governor."

Immediately upon the convening of the division on September 14 for hearing upon the charges, preferred by

the division and by the governor against these petitioners, counsel for the latter (respondents below) filed a motion to disqualify the chairman of the division from participating in the hearing. This motion was in writing and specified particular grounds showing that the chairman was personally interested and biased and had prejudged the case against these respondents, upon which grounds the chairman was asked to recuse himself, or to be disqualified from participating in the hearing. Thereupon, counsel for respondents below (petitioners here) formally requested an opportunity to offer testimony of witnesses then present in proof of the allegations contained in said motion.

After some argument of counsel upon this motion, and after original charge number *two* was expunged from the record upon motion of the attorney general, the following extract, among others, from the transcript indicates the action of the chairman and division at that time on the motion to disqualify the chairman:

> " Mr. Kiernan: May I take up one of these matters at a time? In the first place we are here on all of the charges. In the second place your motion is denied, Mr. McMahon."
>
> "Mr. (Lawrence) Hogan: We have evidence to present on that motion."
>
> "Mr. Kiernan: We deny the motion, and give you the right to present your testimony at a later date."
>
> "Mr. Hogan: How?"
>
> "Mr. Hartigan: We could take all evidence now *de bene*."

In other words, to accommodate the convenience of the division and the witnesses already summoned by them to give testimony in regard to certain of the charges against these petitioners, it was apparently represented and understood by all that the testimony of these witnesses on such charges would be taken *de bene*; that the rights of counsel for these petitioners to present evidence, later in the hearing,

in support of their motion to disqualify the chairman, would be preserved without prejudice.

Over the objection of the respondents below (petitioners here) and on motion of the attorney general, the two charges preferred by the governor were then made a part of the original charges and were numbered seven and eight.

Apparently the hearing was treated by the division as being in the nature of a trial upon a criminal complaint, because the respondents were then asked to plead to the charges. Reserving to themselves the right to press their motion to disqualify the chairman for personal interest, bias, and prejudice and to introduce testimony to substantiate the allegations of said motion, each of the respondents then denied the charges, pleaded not guilty, and the hearing proceeded:

> "Mr. Hogan: . . . Getting back to the motion to disqualify."

> "Mr. Kiernan: Before we proceed with that, may I say the Chief will grant the Attorney General's motion to expunge charge #2. The Chief of the Division will not sit or act in any capacity on #5 which involves the Chief of the Division personally."

> "Mr. Hogan: In support of the motion to disqualify we have evidence to produce and we feel it would be but proper to have the Board hear our evidence on that before there is a ruling upon it. Now I would make this suggestion, if for instance there are certain witnesses here and it is a question of accommodating those witnesses, we would be perfectly willing and would possibly make this suggestion that before proceeding, and without waiving our motion but before proceeding to hear the evidence in support of it and withholding perhaps action presently on the motion, that these witnesses might be heard *de bene*. When that is out of the way, we might proceed at the pleasure of the Board with evidence on the motion rather than proceeding summarily."

"Mr. Kiernan: You may reserve your right to present the evidence at a later time during the proceedings at the end of the case."

"Mr. Hogan: That might be confusing. Don't you think it might be well to withhold our motion and withhold action on it and it be understood we are not waiving our rights upon it and take evidence on it?"

"Mr. Kiernan: Your right to make the motion will be reserved; at this time the Board will take no action."

"Mr. McMahon: With reservation of our rights?"

"Mr. Kiernan: That's right and we will proceed with the testimony on the charges."

The first day was consumed largely in taking testimony upon the above-quoted charges and the chairman participated in all of the votes and rulings of the division. On conclusion of the testimony on this day, the chairman announced that they "ought to follow the regular practice and put in this case and go right along, proceed in the regular manner." At this time, counsel for Narragansett again moved for disqualification of the chairman and asked a continuance to permit introduction of evidence on that motion. The attitude and action of the chairman and division at that time appears in the following extract from the transcript:

"Mr. McMahon: At this time I want to move again for disqualification and ask to be given a continuance so that we can introduce evidence on that motion."

"Mr. Kiernan. The division has talked over and given some consideration to your motion to disqualify the Chief of the Division on the grounds which you alleged in your petition. The Division feels that under the circumstances it might not be proper to permit you to put in testimony to disqualify the Chief of the Division on your motion, because the Chief of the Division would not have an opportunity at this hearing of testifying to defend himself on your motion. We believe that the proper place for your motion to be taken up

is in a higher court on the usual writ of *certiorari*; but nevertheless feeling that this is an important point in your whole case and as Chief of the Division speaking fairly and impartially as you gentlemen who have practiced law with me in the State of Rhode Island for many years know, it is not my purpose to sit in any manner which might be proven or could be proven that I was prejudiced or disqualified. Now the first thing to be considered: have we the right to consider whether or not a member of this Division can be disqualified from acting on this motion of prejudice? That being the case and wishing to consult the authorities in regard to the question and to act fairly and impartially both in regard to the state of Rhode Island which we represent and Walter E. O'Hara and the Narragansett Racing Association, Inc., I am going to grant your motion for continuance—that is the Division. When I say I, I speak as the Division. I hope it is not taken wrong. The division will grant your motion for a continuance until ten o'clock tomorrow morning with the understanding that all witnesses summoned will appear here at that time.

"Adjourned until 10 A. M.
"September 15, 1937"

On the following day, September 15, the hearing was called to order at 10 o'clock, a. m., and, due to engagements of counsel in the superior court, was recessed until 1 o'clock. At that time the transcript shows that the hearing was resumed as follows:

"Mr. Kiernan: We will proceed with the hearing of the Racing Division versus Narragansett Racing Association and Walter E. O'Hara. Mr. Attorney General, I understand you have a motion to make."

"Mr. Hartigan: Yes. I move that charge #5 namely, ... be expunged from the records."

Then followed the granting by the chairman and division of that motion and their granting of another motion of the

attorney general to expunge the words, "the Chief of the Racing Division" from charge #7. Thereupon, the hearing proceeded according to the transcript as follows:

"Mr. Hartigan: Now I am ready to proceed on charge #3."

"Mr. Kiernan: Just a moment before you proceed, Mr. Attorney General. There has been a motion filed with this Division. This Division desires now to rule on that motion."

"Mr. Hogan: Before the ruling we would like to present witnesses in support of the motion. We make this suggestion and ask that the Chairman or the Chief of the Division ought with propriety remove himself from any position in which he votes upon any of the questions involved in this matter of his disqualification and we think we should be allowed to present evidence in support of the various grounds alleged in the motion to disqualify. The petitioners are ready to proceed with witnesses to show by way of evidence the basis for the various grounds in the petition and we are ready to call our witnesses in that matter, and desire further to state on the hearing on this motion of course the Chief very likely would be a witness—probably for us on that motion, and we desire to proceed with the evidence and are ready to do so with the witnesses."

"Mr. Kiernan: Your proffer of testimony is denied. The motion itself is denied. Your exception is noted both to the proffer of testimony and the motion itself.
                    "Respondents' Exceptions Noted."

"Mr. Hogan: In view of the ruling I would like to make the definite offer of proof."

"Mr. Kiernan: The Division will admit you have proof to offer."

"Mr. Hogan: Shouldn't we state it on the record?"

"Mr. Kiernan: We deny the proffer of testimony and note your exception to our ruling and deny your motion and note your exception to our ruling."
                    "Respondents' Exception Noted."

102

"Mr. Hogan: So that I understand we are not even allowed to make an offer of proof?"

"Mr. Kiernan: You are not allowed to proffer your testimony at this time on your motion."

"Mr. Hogan: Beyond that we desire to make the offer of proof for the record."

"Mr. Kiernan: Your offer of proof for the purpose of the record is denied and exception noted."

"Respondents' Exception Noted."

"Mr. McMahon: Might we also have it noted on the record that the Division will not even give us a chance to tell what that proof will be regardless of the proof?"

"Mr. Kiernan: You will not have that noted on the record. You may offer any testimony you have in this matter on a writ of *certiorari* in the Supreme Court of Rhode Island, where at that time the Chief of the Division can take the stand and himself answer your charges."

Mr. McMahon: Your ruling is, as I understand, that we are restricted until we have the writ of *certiorari* to put our offer in; is that it?"

"Mr. Kiernan: Yes, Proceed with the case."

The motion to disqualify the chairman was thus denied, the offer of evidence to support that motion was refused, and the request of the respondents below to put on the record an offer of proof of the allegations of their motion to disqualify the chairman was again denied. The record discloses that the chairman frankly admitted that counsel for respondents below "had proof to offer", in support of the allegations of their motion to disqualify the chairman, but the division would not let them put that proof in the record.

It thus appears that counsel for the respondents below (petitioners here) were led to proceed with the hearing on the first day to accommodate the division and its witnesses on the representation and understanding that the testimony

to be introduced was to be taken *de bene* and that such proceeding would not in any way prejudice their rights to present, later in the hearing, evidence in support of their motion to disqualify the chairman from participating in the hearing; that, notwithstanding the earlier ruling and assurance of the chairman and division in this respect, counsel for the respondents below were summarily prevented from introducing then or at any time any evidence in support of their motion, as repeatedly requested; and that they were prevented from even putting on the record their offer of proof to substantiate these allegations of their motion.

It is worthy to note here that, after the first day's hearing of testimony on the charges, the division and chairman dropped charge #5 and part of charge #7, in which the chairman appeared to be personally interested and involved. These charges, however, were part of the charges upon which the hearing was called and to which the respondents were ordered to plead. They were still a part of the charges in the record when, as the chairman said, the hearing was to be upon *all* the charges and when the motion to disqualify the chairman was first made. They were not dropped until the second day of the hearing, and apparently the chairman and division felt that the dropping of those particular charges was necessary because of his personal interest therein. No evidence was tendered by or on behalf of the chairman for the record by way of testimony, affidavit, or otherwise, denying or contradicting the charges of interest, bias and prejudice alleged in the motion to disqualfy him.

The petitioners here contend, in effect, that the chairman was disqualified by personal interest, bias, or prejudice from sitting on the tribunal which was to hear and determine the charges; that the division did not afford them a full, fair, and impartial hearing; that the decision of the division is not supported by any legal evidence, and that the division committed prejudicial error in denying the petitioners' motion to disqualify the chairman without permitting them

to introduce evidence in support thereof or even to place on the record their offer of proof in support of said motion.

On the other hand, it is contended substantially for the division that it was not improper to refuse evidence of the chairman's alleged disqualification, because it was inadmissible at such hearing and could only be introduced properly in support of a petition for a writ of prohibition or of *certiorari;* that the petitioners here waived their rights to urge the chairman's disqualification by proceeding with the hearing before the division and in failing to apply for a writ of prohibition against the chairman's participation; and that, even if the chairman were proved to be disqualified by his personal interest, bias, or prejudice, he nevertheless was required under the law to sit at the hearing and take part in the determination of the charges, by virtue of the doctrine of necessity, so-called; that is to say, he *had* to sit because without him, the division, as constituted under the law, would be unable to function and perform its duties.

A careful examination of the record presented to us for consideration and of the authorities upon the law applicable to the circumstances here presented convinces us that the issue of the chairman's disqualification because of his alleged personal interest, bias, or prejudice, is determinative of the case. Hence the other reasons urged by the petitioners need not be discussed in detail. On this issue, we are of the opinion that none of the reasons advanced on behalf of the division for denying the motion to disqualify the chairman and for refusing to permit testimony to be introduced, in support thereof, is sound; and that, in so acting, chairman Kiernan and the division committed prejudicial error, requiring that the record be quashed on *certiorari* proceedings, no other remedy being available.

It is well settled that the division of horse racing, when conducting a hearing such as the present one, is performing a judicial or quasi-judicial function and is not acting merely in an administrative or ministerial capacity. *Glass* v. *State*

*Board of Public Roads,* 44 R. I. 54; *Narragansett Racing Association, Inc.* v. *Kiernan,* 59 R. I. 79, and cases cited. That being so, it is a fundamental principle of law that a party, against whom the division has preferred charges for hearing, is entitled to a competent tribunal and to a fair and impartial hearing of its case. It follows also from the character of the tribunal and its function in such a hearing that the material issues presented upon that hearing must be judicially determined. This requires that its rulings and decisions be supported by legally competent evidence. See *McCarthy* v. *Board of Aldermen,* 38 R. I. 385; *Fainardi* v. *Dunn,* 46 R. I. 344; *Bishop* v. *Superior Court,* 50 R. I. 13; *Narragansett Racing Association, Inc.* v. *Kiernan, supra.*

The motion to disqualify the chairman, therefore, was not addressed to the discretion of the chairman or the division, but raised an issue which was material and vital to the jurisdiction of the tribunal as then constituted. The motion was made at the very beginning of the hearing and was repeatedly insisted upon by the respondents below, until finally denied. When it was first made, the respondents were bound to answer all the charges, which included at least two in which the chairman was personally interested and involved. The later dropping of these two charges clearly indicates to us the consciousness of the chairman and division that there was an interest and prejudice affecting him, so long as these charges were in the case, and we think that the mere dropping of these charges could not erase that interest and prejudice from the chairman's mind.

Upon a careful examination of the record upon this material issue, which was determinative of the jurisdiction of the tribunal to hear the charge, we have been unable to find any legal evidence in the record which supports the decision denying the motion to disqualify the chairman. On the contrary, there were indications of interest and prejudice on the part of the chairman in some of the original charges and there was an offer of evidence by the proponents of the mo-

tion to substantiate the allegations of his interest and prejudice, and an admission in the record by the chairman that "they had proof to offer", in support of the allegations of the motion.

Moreover, the record before us discloses that the chairman and the division arbitrarily prevented the respondents from introducing evidence to substantiate the allegations of their motion to disqualify him. They went so far as to refuse the respondents below even the right to have an offer of proof placed in the record. Similar action has been held in several well-considered opinions in cases from other jurisdictions to amount to a denial of a full, fair and impartial trial, and to deprive the tribunal of its jurisdiction to conduct the hearing.

In *Moore* v. *State of Ohio,* 118 Ohio St. 487, the court set aside a conviction in a criminal proceeding where, on a motion made by the defendant to disqualify the trial judge because of his alleged predetermination of the facts of the case, the procedure followed was very similar to that taken by the division in the instant case. The supreme court, in that case, at page 489 used the following language: "More serious than the allegations of the affidavit is the fact that the court refused to permit her to introduce testimony in support of the affidavit and motion for removal of the cause to some other court of competent jurisdiction." And again, at page 491, said: "In the instant case, while it does not appear, and we do not decide, that the judge was disqualified by reason of bias or prejudice or having prejudged the case, it does clearly appear that the defendant was not afforded the opportunity to offer testimony upon the point. We would not hold that a frivolous and unsupported claim of bias or preconceived judgment on the part of the judge or magistrate would *ipso facto* disqualify the judge, but we are unqualifiedly of the opinion that any one who asserts such a claim should be afforded an opportunity to support the claim by the introduction of testimony. While it would

not be the duty of the judge to tamely submit to unfounded imputations upon his integrity, he should at least permit a record to be made, so that a reviewing court may determine whether or not there has been a trial before an impartial tribunal."

In *Gaskins* v. *Gaskins,* 181 S. E. 850, (Ga.), the court reversed the decision of a lower court because the latter had proceeded improperly on the plaintiff's motion to disqualify the trial judge. It appeared from the record that the plaintiff stated that she was ready to show the facts set out in her motion, but that the trial judge refused to permit her to do so or to consider the matter. The court held, at page 852: "The judge erred in refusing to entertain the motion to disqualify himself and in thereafter proceeding to exercise the judicial power of the court. . . . The error in refusing to entertain the motion rendered all further proceedings nugatory . . . ." See also *State* v. *DeMaio,* 70 N. J. L. 220; *In Re Crawford's Estate,* 160 A. 585, (Pa.), and discussion in 15 R. C. L. 539, § 27, Recusation. No authorities to the contrary have come to our attention.

Counsel for the governor, however, contends that the petitioners here, by failing to petition for a writ of prohibition to prohibit the chairman of the division from sitting in the hearing, on the ground of his disqualification for interest, bias, and prejudice, waived their right to raise such question in the proceeding before us. In support of this contention, counsel cites the recent case of *Kavanaugh* v. *Paull,* 55 R. I. 41.

He appears to believe that the Kavanaugh case lays down the proposition that only by writ of prohibition can the question of disqualification be raised. That is not so, and a careful reading of the opinion in that case will show that we did not so hold. The court there said, referring to the presentation of the charges against Kavanaugh: "The petitioner could then, promptly after that notice, by applying to this court for a writ of prohibition, have raised an objec-

tion, on the ground of prejudice against him, to the right of the council to pass upon the charge of misconduct. But instead of taking that procedure or *otherwise promptly* raising the question of prejudice, he obtained from the council two postponements of the hearing, without objecting to its jurisdiction over him, . . ." (italics added)

It is obvious from this language that the court was not deciding what was the proper remedy to pursue in raising the issue of disqualification, or that prohibition was the only remedy, but that it was condemning the unreasonable delay of the petitioner in raising the issue after he had notice of the charges preferred against him and after knowledge of facts upon which he based his allegations of disqualification of certain members of the council, who were to hear those charges. Immediately following that portion of the opinion quoted above, the court takes occasion to cite two cases where it said there was no delay in raising objections. *Clark* v. *Alcoholic Beverage Comm.,* 54 R. I. 126 and *Hanna* v. *Board of Aldermen,* 54 R. I. 392. In neither of those cases was the question of disqualification brought here by prohibition. In the *Hanna* case the alleged disqualification of certain members of the board of aldermen was known, before the hearing opened. The petitioner Hanna protested at the hearing against the sitting of those members and, upon the protest being overruled, participated in the hearing. This action of the board in overruling the protest was alleged by the petitioner in his petition for the writ of *certiorari* as a denial to him of a fair and impartial hearing. The court entertained this ground and sustained it. It thus appears that this court has approved of action such as that taken by the petitioners in the instant case, which is substantially similar to that in the *Hanna* case, and therefore it cannot be successfully contended that prohibition is the only method by which an issue of the kind now before us can be brought to this court.

It is significant that in the case of *Kavanaugh* v. *Paull, supra,* the council freely permitted testimony to be introduced as to the alleged disqualification of several of its members, so that, on review by *certiorari* in this court, we were able to say that not only on the law but on the facts also we did not feel justified in setting aside the decision of the council. In the hearing now under consideration, the chairman of the division, against whom the charge of disqualification was made, effectively excluded such evidence.

The writ of prohibition rests in the discretion of this court, and is rarely granted, except upon a clear showing that it is the only available and adequate remedy to prevent the threatened wrong. *McLaughlin* v. *McLaughlin,* 44 R. I. 429; *Stevens* v. *Superior Court,* 44 R. I. 282; *Chew* v. *Superior Court,* 43 R. I. 194; *Haworth* v. *Sherman,* 37 R. I. 249; *Clouting* v. *Vidal,* 107 A. 78, (R. I.).

In *McLaughlin* v. *McLaughlin, supra,* the writ was granted to prohibit the superior court from entering a final decree of divorce on the motion of the respondent, over the objection of the petitioner. And then, while the court said it might be possible for the aggrieved petitioner to bring *certiorari* if the justice of the superior court acted as he intimated he would on the hearing, nevertheless that remedy might well prove inadequate, because the respondent might contract a new marriage and cause the rights of a third party to arise before proceedings in *certiorari* could be started and serve as a stay. Thus the court indicated that, if *certiorari* were adequate, it would have denied prohibition.

And in the *Stevens* case it refused the writ on the ground that it would not assume that the inferior tribunal would not pass correctly upon the question of its own jurisdiction. The court said: "This court will not prohibit the action of such tribunal but will leave the parties to their ordinary methods of review following a decision, unless it appears from the face of the record that such inferior tribunal should

assume jurisdiction a decision therein might work irreparable injury."

Again in *Cloutier* v. *Vidal, supra,* the court dismissed a petition for the writ directed to the probate court of West Warwick in adoption proceedings pending before that court for the reasons that the petition for adoption appeared upon its face to be within the jurisdiction of the probate court, saying: " . . . this court will not assume that the probate court of West Warwick will grant said petition if the facts which shall appear upon such hearing thereof shall show that it has no jurisdiction;" and for a further reason, the court said that in any event the parties in interest had an adequate remedy by appeal and therefore it would not grant the writ in such a case.

In the instant case, the petitioners would not have been justified in assuming that the chairman of the division would not give them a fair and impartial hearing on the question of his alleged disqualification. Instead of so assuming, they properly presented that question for his determination rather than resorting to this court for a writ of prohibition. Moreover, it is apparent from the record of the first day's proceedings before the division that petitioners were led to believe that their motion would be fairly considered. It was not until the next day that they definitely knew that they were going to be denied an opportunity to present their evidence of disqualification. It is doubtful whether at that time they would have been justified in resorting to a writ of prohibition, as they were still not without a remedy by *certiorari* to quash the proceedings should it become necessary to take such action at the conclusion of the hearing.

We are of the opinion that the petitioners here seasonably raised the issue and acted with due diligence to protect themselves against a hearing by an alleged prejudicial tribunal and that it is not due to their fault that the record before us does not show all of the evidence which they offered to present upon the issue of disqualification of the chair-

man. For these reasons, the contention made by counsel that petitioners waived their rights under the law of this state is without merit.

It is further contended for the division and particularly stressed by counsel for the governor that, even regardless of any established disqualification of the chairman, he was bound under the law to sit by virtue of the doctrine of necessity, so-called. Counsel concedes, however, that such doctrine has never been adopted in this state. All the decisions relating to this subject-matter seem to presuppose a contrary doctrine. See *Kentish Artillery* v. *Gardner*, 15 R. I. 296; *Hanna* v. *Board of Aldermen, supra; Clark* v. *Alcoholic Beverage Comm., supra.*

Moreover, in the jurisdictions where such doctrine of necessity prevails, it is "well established that the rule of disqualification of judges must yield to the demands of necessity, as, for example, in cases where, if applied, it would destroy the only tribunal in which relief could be had." 15 R. C. L. 541, § 29, "Judges", and cases cited. A very early statement of it is contained in *Pearce* v. *Atwood*, 13 Mass. 324, (1816). See also *State* v. *Polley*, 34 S. D. 565, 138 N. W. 300, 42 L. R. A. (N. S.) 788.

The only cases cited by counsel for the governor which seem to support his contention on the doctrine of necessity are *State ex rel. Mueller* v. *District Court*, 87 Mont. 108, and *Montana Power Co.* v. *Public Service Commission of Montana*, 12 Fed. Supp. 946, (U. S. D. C., 1935). In these cases there were special circumstances which lessen the weight to be given to them as authorities. The weight of authority in other states, which recognize the doctrine of necessity, is overwhelmingly in favor of the rule as above stated in 15 R. C. L., *supra.* In all other cases relied upon by counsel on this point, the facts were such that a successful challenge to the alleged prejudiced member or members of tribunal would have destroyed the tribunal itself, leaving no competent tribunal to function or to act. In the in-

stant case, even without the chairman there was in contemplation of law a competent tribunal of two members, who could have legally functioned.

Counsel for the governor also contends that the doctrine of necessity applies wherever the disqualification of one member of a court or board would leave an even number of members who therefore might divide evenly so that no decision would be reached by the only tribunal authorized to act on the matter in question. But this very contention has been overruled, in reasoning that is convincing to us in *Stahl* v. *Board of Supervisors*, 187 Ia. 1342.

Where a disqualified member of a tribunal, which is composed of two or more persons and which exercises judicial or quasi-judicial power, acts as a member of the tribunal notwithstanding his disqualification, such action makes a decision of the tribunal void or at least voidable at the instance of a party aggrieved who has made timely protest to the jurisdiction of the tribunal as constituted. It appears that in England, and in some states in this country, the decision by a tribunal so constituted is void, while in other states it is only voidable.

The following cases are illustrative of the attitude taken by the courts in the circumstances above described. In *The Queen* v. *Hanley*, 1 Q. B. (1892) 504, a member of a board of conservators under the Fishing Act voted with others in a unanimous vote to have process issue against the defendant for illegal fishing. The defendant was convicted before a bench of magistrates which included this disqualified member. The court quashed the record on *certiorari* and, at page 506 of the opinion says: "If there is any danger of a substantial bias likely even unconsciously to influence a justice, he ought not to sit."

In *Queen* v. *Justices of Suffolk*, 18 Q. B. 416, where the removal of a pauper from one parish to another was in issue, a justice, who owned land in one of the parishes, stayed with the other justices and heard the case but took no part in the

proceedings. The court held that the presence of the disqualified justice as a member of the tribunal vitiated the entire proceedings, Wightman, J. at page 421 of that opinion, saying: "It is very important that no magistrate who is interested in the case before the court should interfere, while it is being heard, in any way that may create a suspicion that the decision is influenced by his presence or interference."

In *The Queen* v. *Justices of Great Yarmouth,* 8 Q. B. Div. 525, (1882), at page 528, the court says that the knowledge, by the rest of the justices, that the mayor (who was the presiding justice of the body passing on appeals from poor rates) was one of the complainants must have had "a considerable effect upon the minds of those justices who had to decide the appeal," and "that there was a relation produced between the mayor and the other justices which would tend to induce in their minds a bias from which the judicial mind should be kept free." See also *The Queen* v. *Justices of Hertfordshire,* 6 Q. B. 753 (1844-5), where the reviewing court went so far as to hold that the decision was invalid, even though the interested member of the body withdrew before the decision, if he appeared to have joined in discussing the matter.

In *State* v. *Crane,* 36 N. J. L. 394, the action of a road board was before the court for review by *certiorari.* A member of the board who had an interest in the proceedings sat as a member of the board during its hearings and participated in its decisions. Subsequently thereto the legislature passed an act removing the disqualification of such member or members of the board by expunging the objectionable members from the board, and giving effect thereby to the action of the remaining and competent members. Passing upon the validity of the board's action in the light of the statute, the court, at page 404 of the opinion, says: "In other words, the object (of the statute) is to separate the action of one commissioner from the others after the mis-

chief, and to abridge the influence that his interest would otherwise have. That will not help it, for the law does not sever the action that is tainted. The whole is affected. It is an entirety. A majority of the board could have legally acted without Hammer, but he having taken part in the proceedings, the whole was voidable on proper application."

In *Sanborn* v. *Fellows*, 22 N. H. 473, (1851), the body in question was a board of fence viewers, of three members, and it was held that the fact that one of the three was disqualified by interest but nevertheless acted with the others, all concurring in the result, vitiated the decision, though supported by a majority without counting him. The following citations are only a few of the many decisions to the same effect: *Conant's Appeal,* 102 Me. 477; *Wheeling* v. *Black,* 25 W. Va. 266; *Rollins* v. *Connor,* 74 N. H. 456 (1908); *People* v. *Connor,* 142 N. Y. 130; *In re Curtis' Estate* v. *Piersol,* 117 Md. 170; *City Council of Anderson* v. *Fowler,* 48 S. C. 8; *Board of Commissioners* v. *Justice et al.* 133 Ind. 89; *Stockwell* v. *White Lake,* 22 Mich. 341; *State* v. *Bradish,* 95 Wis. 205; *Case* v. *Hoffman,* 100 Wis. 314; *Blanc* v. *Bowman,* 22 Cal. 23; see also *Clark* v. *Alcoholic Beverage Comm.,* 54 R. I. 126, 130, 131; 33 C. J. 1023; 37 L. R. A. 289; L. R. A. 1918 D 244.

Counsel for the governor, in contending for the application of the doctrine of necessity, apparently proceeds on the theory that under public laws 1935, chapter 2250, designated as the "Administrative Code Act" and commonly known as the Reorganization Act, all three members of the division of horse racing, who are empowered by sec. 76 thereof to "hold and conduct all hearings, and make decisions thereon," must act as a unit, or otherwise no valid hearings and decisions can be held or made by the division. This contention is unsound.

A horse racing commission of three members, with clearly defined powers and duties, was created by P. L. 1934, chap. 2086. Section 3 of that act specifically provides as follows:

"Two of the members of the commission shall constitute a quorum for the exercise of any of its powers and the performance of any of its duties." Section 11 of this same chapter provides for the suspension or revocation of a license granted under the act "for any cause which the commission shall deem sufficient, after giving the licensee a reasonable opportunity for a hearing at which he shall have the right to be represented by counsel." The provisions of P. L. 1934, chap. 2086, relating to how the board shall proceed in its hearing and what is required by the statute as a quorum for a valid declaration by the division of horse racing are not repealed or in any way amended by P. L. 1935, chap. 2250, either expressly or by implication. Therefore, under the ordinary rules of statutory construction, such provisions remain and continue in full force and effect. It follows that the disqualification of any one of the three officials of the division who, by said statute, are authorized to hold hearings, would still leave a qualified and competent tribunal to proceed to the hearing and determination of any question that might rightfully be the subject of a hearing by the division.

For the reasons stated, we have found that all of the substantial contentions of counsel for the respondents and for the governor, with reference to the issue of the disqualification of the chairman to sit as a member of the tribunal and to participate in the determination of the charges against the petitioners here, are without merit.

We therefore are of the opinion that on this issue of disqualification of the chairman none of the reasons advanced on behalf of the division for denying the motion to disqualify the chairman and for refusing to permit testimony to be introduced, in support thereof, is sound; and that, in so acting, chairman Kiernan and the division committed prejudicial error, requiring that the record be quashed on *certiorari* proceedings, no other remedy being available.

The prayer of the petition for relief is therefore granted, the record of the hearing before the division of horse racing of the state of Rhode Island and all findings thereon, including the decision of September 17, 1937, are a nullity, and all are hereby quashed.

*Hogan & Hogan,* for Narragansett Racing Assn. & Walter E. O'Hara.

*Raymond J. McMahon,* for Narragansett Racing Assn.

*John P. Hartigan,* Attorney Gen., *Lyman Lisker,* 4th Asst. Atty. Gen., for respondents.

*Michael DeCiantis,* for Governor Robert E. Quinn.