RICHARD J. KAVANAUGH *vs.* PRESCOTT B. PAULL *et als.* as Town Council of Bristol.

FEBRUARY 21, 1935.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker, and Condon, JJ.

Moss, J. This is a petition for a writ of *certiorari* to quash certain records of the town council of the town of Bristol. The writ was issued and the records complained of have been certified to this court.

From these records the following facts appear. On October 2, 1934, Prescott B. Paull as president of the town council and as its committee on police presented to it the following charge, signed by him, against the petitioner, Richard J. Kavanaugh, then chief of police of the town: "In discharge of my official duty as President of the Town Council and as Committee of the Council on Police, I have investigated certain allegations concerning the conduct of Richard J. Kavanaugh, Chief of Police of the Town of Bristol, in the Town of East Providence, on the 19th day of June, 1934.

"In consequence of such investigation I find that said allegations are of such a nature and so affect the public welfare that my duty requires me to charge, and I hereby do charge Richard J. Kavanaugh, Chief of Police and police officer of the Town of Bristol, with misconduct, in that on the 19th day of June, A. D. 1934, he did operate a motor vehicle on a public highway in this State, to wit, Barrington Parkway in the Town of East Providence, while under the influence of intoxicating liquor."

The council assigned the matter for hearing on October 16, 1934, and a notice of the charge and of the date for the hearing was duly issued, and was served on the petitioner October 9, 1934. Such hearing after being postponed twice by the council at his request, was held on October 29 and 30, and November 2, 1934. He was present and was represented by capable and experienced counsel. Full opportunity was given him to make his defense and much testimony was introduced against him and in his favor. At the conclusion of the hearing the council unanimously voted that he was guilty of the charge and that his misconduct was deemed by the council a disqualification in him for the office of chief of police and police officer of the

town, and the council removed and dismissed him from such office.

The proceedings were taken under a provision of Chapter 766 of the Public Laws, 1900, section 1. This section provides for the appointment by the town council of the town of Bristol of police officers, including the chief of police, and then continues as follows: "Provided, however, that any one or more of the police officers so appointed shall be subject to removal from office by the said council at any time, for misconduct or incapacity of such a character as the said council may deem a disqualification for said office; and all such removals shall be by the said council upon charges made in writing, and of which the officer complained of shall have notice and opportunity to be heard thereon."

The first contention which was made by the petitioner at the hearing and was insisted upon in his petition is that his acquittal by a jury in the superior court, on October 24, 1934, of the criminal charge of operating a motor vehicle on a public highway of this state while under the influence of intoxicating liquor, at the same time and place as are mentioned in the specification of his misconduct in the above charge made against him by the chairman of the town council, was binding on the council and prevented it from having any authority or jurisdiction to remove him from his office on that charge. This contention was rightly overruled by the council.

A series of cases in the courts of New York throw much light on the reasons why it is not sound. In *People ex rel. Connolly* v. *Police Commissioners*, 11 Hun, 403, (1877), it was held that a police officer could properly be dismissed from the force by the board of police commissioners of the city of New York after a hearing before the board on a charge of improper conduct with specifications that he had enticed a girl into a house of assignation, although the improper conduct occurred when he was off duty and not in uniform. Among the facts stated by the court as shown by the evidence was the fact that the officer had been

arrested and taken before a magistrate and had been discharged. The court in its opinion did not further mention this discharge but the action of the board was affirmed and the writ of *certiorari* was quashed.

In *People ex rel. Fitzpatrick* v. *French*, 32 Hun, 112, (1884), a writ of *certiorari* was issued to review the action of the same board of police commissioners in removing the relator Fitzpatrick from the police force. The charge was "conduct unbecoming an officer," and the specification was in substance that he had burglariously entered a drinking saloon and had carried off a lot of cigars without the consent of the proprietor. In the court it was insisted in his behalf that the charge imported a criminal offense, which the board had no jurisdiction to try, and that the evidence was not sufficient to justify a conviction of any offense or of "conduct unbecoming an officer." The court in its opinion quotes as follows from the opinion of the Court of Appeals of New York in *People ex rel. Flanagan* v. *Board of Police Commissioners*, 93 N. Y. 97: "As the board of commissioners do not constitute a court its proceedings are not to be controlled or decided by the same degree of formality that would be required upon a charge of a criminal offense before ordinary tribunals of justice."

At page 117 the court in the *Fitzpatrick* case says: "The city of New York is a public corporation. The police department is one of the agencies through which its functions are to be performed; and no court has ever held that the heads of that department cannot be removed upon adequate grounds in the manner the legislature may see fit to prescribe. But the argument is that if he be a murderer, or felon, or criminal of any grade, the legislature cannot authorize his removal by any authority until he has first been indicted, tried and convicted and sentenced by a constitutional court of justice in the forms preserved by the Constitution. It is not well to confuse the powers of administrative or executive bodies to remove subordinates for any conduct showing unfitness for place or position,

with the proceedings of courts of justice to punish crimes. They are essentially different in their objects, and may and do exist and move in their respective spheres without collision or inconsistency."

*People ex rel. Cunningham* v. *Bingham,* 134 N. Y. App. Div. 602, (1909), was a case of *certiorari* proceedings to review the action of the police commissioner of the city of New York in removing the relator Cunningham from the police force. It was held that although the relator had been acquitted upon the trial of an indictment for bribery in releasing a person guilty of a violation of the liquor law, he might legally be tried by the police commissioner for the same act and dismissed for neglect of duty or conduct unbecoming an officer. The charge against the relator specified the very same conduct with which he was accused in the criminal case and which, if he was guilty of it, would constitute the crime of bribery.

At page 603 the court says: "The point is also made that as the acquittal on the indictment was conclusive on the commissioner, the relator could not be put again in jeopardy for the same charge. But, as I have said, the acquittal was not conclusive. Moreover, I think that the indictment and the charge before the commissioner are not to be regarded as the same offense within the principle invoked by the relator, but rather in the words of HARLAN, J., in *Grafton* v. *United States,* (206 U. S. 354), 'but only that by one act he has committed two offenses.' That is, the one act if committed could constitute a violation of the criminal law with the prescribed penalty of imprisonment, and also a neglect of duty and conduct unbecoming an officer of the police force, with the prescribed penalty of reprimand or withholding pay, or suspension or dismissal. In order that the principle of jeopardy apply, it is well settled that 'The former acquittal or conviction must have been for the same identical act and crime.' (*State* v. *Gustin,* 152 Mo. 112, citing authorities.) The relator was not tried upon the same charge which was the subject-matter of the indictment,

for the act which was charged as bribery in the indictment was charged as neglect of duty and conduct unbecoming an officer at the trial before the commissioner. It is to be noted that the commissioner did not act upon the record of the criminal trial alone, because a number of witnesses were called and examined before him. Although the relator was entitled to the rule of reasonable doubt in the criminal prosecution, that rule did not obtain in the hearing of the charges now under review. Aside from the questions of jurisdiction, procedure and violations of rules of law, the question before us is whether there was any competent proof of all the facts necessary to be proved in order to authorize the determination, and, if there was such proof, whether there was such a preponderance of proof against the existence of any of those facts that the verdict of a jury affirming such existence in an action in the Supreme Court would be set aside by the court as against the weight of evidence." The latter part of the rule thus laid down, as to the preponderance of proof, was established by a statute in New York and is not in accordance with the common law or the decisions of this state, as will be shown later in this opinion.

These cases were not in the highest court of New York, but so far as we have been able to ascertain none of them has been reversed or overruled and we have found no authority to the contrary elsewhere. The reasoning in these cases and the conclusions arrived at are in our judgment correct and are applicable to the present case. A similar conclusion was reached by this court in *Keats* v. *Board of Police Commissioners*, 42 R. I. 240. In that case a writ of prohibition was sought by a police officer to enjoin the respondents from hearing charges against him of conduct unbecoming an officer and neglect of duty, so far as these charges were based on conduct for which he had been indicted and acquitted on a criminal charge. The contention of the petitioner was that after the verdict of not guilty all issues involved in the trial were *res adjudicata* and

that the board was thereby barred from considering charges against him which raised questions involving the same issues. This court held the contention to be unsound, saying that "the verdict of not guilty is simply a bar to further criminal prosecution for the same offense." The reasoning in the opinion was that it was a settled rule of law that an acquittal of a defendant on a charge of crime was no bar to a civil action against him by one who had suffered damage from the same acts on which the charge of crime was based, because the parties were not the same and the rules as to the burden of proof were different in the two proceedings; and that the same rule of law applied to the proceedings before the board of police commissioners. The petitioner in the present case tries to distinguish it from the *Keats* case, but we are unable to see any substantial difference.

The superior court in trying a man on a charge of violation of the criminal law and the town council of Bristol in deciding whether the same man is qualified to be the chief of police of the town are separate and independent tribunals moving in distinct spheres and are governed by different considerations and very different rules as to the necessary degree of proof required for a finding by the one tribunal of guilty or not guilty and a finding by the other tribunal of unfitness or fitness. The purpose of the former proceeding is the punishment of crime and of the latter the maintenance of the morale and efficiency of the police force and its good repute in the community. Therefore the fact that a jury has acquitted a man of a criminal charge does not prevent the council from finding such misconduct on his part as in its judgment disqualifies him for the office which he holds, even though the same conduct by him is involved in both cases.

The petitioner also contends that he did not have a hearing before a fair and impartial tribunal because president Paull and councilmen Dennis and Romano had prejudged the case against him. In support of this contention he

relies upon sworn testimony by himself as to statements made by Mr. Paull in conversation between them on the next evening after the events which were the basis of the charge against him. If this testimony was correct, Mr. Paull made statements which showed that he was prejudiced against the petitioner and intended to have the latter removed from office by the council, if he could, and also made statements that he could and would influence councilmen Dennis and Romano against the petitioner. The testimony as to these latter statements was mere "hearsay" and could not properly affect the capacity of these two councilmen to take part in the hearing. The petitioner also testified that Mr. Paull stated that he was a member of the board of directors of a bank which held a mortgage on property belonging to Mr. Dennis and that this gave him a hold upon Mr. Dennis, which he would use against the petitioner.

That Mr. Paull was a director of a bank to which such a mortgage was made was admitted or proved. But in affidavits filed with this court by consent of counsel, Mr. Paull denied making any of the alleged statements and any prejudice against the petitioner, and Mr. Dennis and Mr. Romano denied that Mr. Paull had influenced them or tried to influence them in any way or that they were in any way prejudiced against the petitioner. It is argued in his behalf that the stenographic record of the proceedings at the hearing shows such prejudice by these three men against him, but in our judgment no such prejudice and no unfairness in the proceedings is shown by such record.

It is noteworthy that if the alleged statements, which to our minds constitute the sole basis of the charge of prejudice, were made by Mr. Paull, they were made to the petitioner himself on June 20, 1934, long before Mr. Paull presented to the council the charge against the petitioner, of which the latter had formal notice on October 9, 1934. The petitioner could then, promptly after that notice, by applying to this court for a writ of prohibition, have raised an objection,

on the ground of prejudice against him, to the right of the council to pass upon the charge of misconduct. But instead of taking that procedure or otherwise promptly raising the question of prejudice, he obtained from the council two postponements of the hearing, without objecting to its jurisdiction over him, and did not make any objection whatever on this ground until the conclusion of all the testimony on the merits of the charge against him, on the third evening of the hearing. To the effect that any known objection to the qualification of a judge or a member of any tribunal must be promptly made or it is waived see *Moses* v. *Julian*, 45 N. H. 52; *Hutchinson* v. *Manchester St. Ry.*, 73 N. H. 271, 276; 17 Am. & Eng. Enc. of Law, (2d. ed.), 742, 743; 33 C. J. 1013, § 180; 33 C. J. 1020, § 197; 15 R. C. L. 539, 540, secs. 27, 28. In view of the facts and law just above stated and of the very doubtful and conflicting evidence as to the alleged prejudice and unfairness of members of the council, we do not feel justified in setting aside on that ground the decision of the council.

In his brief the petitioner relies upon *Clark* v. *Alcoholic Beverage Commission*, 54 R. I. 126, 170 Atl. 79, and *Hanna* v. *Board of Aldermen*, 54 R. I. 392, 173 Atl. 358, as supporting his contention on this matter. In those cases the adverse interest and prejudice of members of the tribunals in question were clearly established and there was no delay in raising objections on those grounds. The cases are clearly to be distinguished from the present case.

The petitioner further contends that a proper form of oath was not administered to the witnesses at the hearing because, he says, the appeal to God was omitted. No objection was made on this ground at the hearing; and no attention was called to the form of oath until all the witnesses had testified, though the petitioner and his counsel were present throughout the hearing and the petitioner had himself testified. In view of these facts and the statement in the stenographic record as to each witness that he was sworn, and the statement on page 133 of that record showing

that the words "So help you God" were used in administering the oath to Dr. Hascall, we are convinced that the usual form of oath was administered to each witness, although the written slip of paper which the president was using as a memorandum in swearing the witnesses, as shown on page 258 of the record, omitted those final concluding words. As to them he probably felt that he needed no memorandum. Therefore this contention is overruled as not supported in fact. This renders it unnecessary to decide whether the testimony in such cases must be under oath and whether an oath to be valid must contain an invocation to God.

It is not necessary in such a hearing as the one in question that all the rules of procedure applied in courts should be strictly followed. Throop on Public Officers, § 380, after saying that such a hearing is judicial in character, continues as follows: "But the proceeding is not a common law trial, with the incidents and common law rights pertaining to such a trial, nor strictly speaking, a trial before a court. It is an investigation required by the statute in such cases, to furnish information to the removing power, upon which it may act in removing the person against whom the charges are made. The right to a fair trial does not give the party the right to insist on the formalities necessary in criminal trials. And the same precision and accuracy as upon a trial at common law is not required in these proceedings; it suffices that the substance thereof should be fairly preserved." The records before this court do not show that the petitioner's fundamental rights were in any way violated in the conduct of the hearing.

There was clearly sufficient evidence to support the decision of the council and although there was also much evidence in favor of the petitioner it is not a part of the functions of this court to pass upon the question of the weight of the evidence. *Baur* v. *Town Council of Narragansett*, 39 R. I. 500, 502; *Hanna* v. *Board of Aldermen*, 54 R. I. 392, 396; 173 Atl. 358, 359.

*In People ex rel. Hart* v. *Board of Fire Commissioners*, 82 N. Y. 358, the relator, after a hearing before the board, was discharged from the post of fireman in the fire department of the city of New York, on a charge of intoxication. In sustaining the decision on *certiorari* proceedings the court of appeals says, at page 362: "It is manifest that the interests of the service require that a wide discretion should be vested in the commissioners in determining what conduct is injurious to the public interest and unbecoming an officer, and their judgment, unless there is an entire absence of evidence to sustain it, ought not to be disturbed. It is not to be presumed that they will act unfairly, or through the influence of passion or prejudice."

The town council of Bristol was chosen by the voters of that town to have charge of administering its affairs, including its police department, and the statutory provision above quoted confers upon it expressly the power to remove from office any member of that force, upon written charges, after giving him proper notice thereof and an opportunity to be heard, "for misconduct or incapacity of such a character as the said council may deem a disqualification for said office." This court should not interfere with the exercise of this discretionary power, unless well convinced that it has been abused. Throop in the work above cited says in section 395: "So, the courts will not review the exercise of a power of removal, where, in the opinion of the board vested with such power, the misconduct was sufficient for removal, 'except in the clearest case of abuse.'"

After a careful consideration of the records and the arguments of counsel, we are of the opinion that no sufficient reason has been shown for setting aside the action of the town council. Hence, it is ordered that the writ of *certiorari* in this case be quashed.

*James H. Kiernan, Patrick P. Curran, G. William Grande, James A. McGuirk,* for petitioner.

*Edward L. Leahy,* for respondents.