WILLIAM E. KELLEY *vs.* CITY COUNCIL OF THE CITY OF CRANSTON.

APRIL 8, 1938.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

Moss, J.  This is a proceeding begun by a petition for a writ of *certiorari* to review a decision by the respondent city council by which charges against the petitioner for misconduct as a police officer of the city of Cranston were sustained and it was voted that he be removed from his office as a member of the permanent police department of that city.  The writ was issued to the city council and its records relating to the matter are now before us.

From these records it appears that on February 14, 1938, the chief of police of the city made charges against the petitioner and filed them with the mayor of the city. On the next day the mayor suspended the petitioner from his office and caused written notice to be served upon him which informed him of his suspension and specified the charges of misconduct against him. It also informed him that the charges would be submitted to the city council on February 18, 1938, at 8 o'clock p. m., at which time he would be given an opportunity to be heard thereon. This was the time of the next regular meeting of the council. The charges were set forth as follows: "You are charged with misconduct as a Police Officer in that, on Sunday, February 13, 1938 you failed to pull your duty call at 4:40 A. M. as required by Police Regulations, and were thereafter at 5:05 A. M. found asleep in the building of the Amoco Gas Station, so-called, at the corner of Pontiac Avenue and Park Avenue in said City of Cranston."

At that meeting the petitioner was present with his attorney. The mayor stated to the council the charges made to him by the chief of police and read the notice which had been served on the petitioner and announced that the hearing would then begin. A stenographer was sworn to take down the testimony to be presented, but before any testimony was presented the petitioner's attorney entered a special appearance for the petitioner, and in behalf of the latter presented a written claim and demand that the council "cause due and legal service of notice of the pendency of said charges and of the time and place of the hearing thereon to be served on" the petitioner.

On being informed that the council would at once proceed with the hearing of the charges against him, the petitioner, by his attorney, read into the record a protest against the decision of the council to proceed with the hearing at that time, stating as the grounds of the protest that a legal service of notice of the pendency of the charges had not been made by

the council upon the petitioner; and that the council, under the provisions of the public laws of 1923, chapter 472, had no jurisdiction to try and determine the charges at that meeting.

The petitioner's attorney stated that neither of them would participate in the hearing and neither of them did so; but no request was made for any postponement of the hearing to enable them to make a better defense to the charges. The council then proceeded with the hearing and testimony was presented on the charges. At the close of the hearing the council voted that the petitioner be removed from office as a member of the permanent police department of the city because of misconduct as a member of such department; and he was accordingly, on the next day, formally removed from his office by the mayor.

The only question now presented to us is whether, on the facts above stated as preceding the date of the meeting, and under the statutory provisions above referred to, and in the absence of any request by the petitioner for further time to prepare his defense, the council had jurisdiction, against his protest, to proceed to hear and decide on the charges against him, and to vote that he be removed from his office.

The relevant statutory provisions are contained in sec. 2 of the above cited statute, which applies to the city of Cranston. After dealing with the suspension of police officers, the section contains the following proviso as to their removal, *"and provided, however,* that said police officials, detectives and patrolmen shall not be subject to removal from office at any time, except for misconduct or incapacity of such a character as the city council may deem a disqualification for said office, and all such removals shall be by the mayor, upon order of the city council, based upon charges made in writing to said city council and of which the officer, against whom said charges are made, shall have had notice of and opportunity to be heard thereon before said city council, at its next regular meeting after said charges have been preferred."

The exact meaning of this language is far from perfectly clear. We have considered it in all its parts, read in the light of the evident purpose of its enactment, and in the light shed upon it by previous opinions of this court in cases governed by similar but not identical provisions applying to other cities or towns. See especially *Sanders* v. *Town Council of Warren,* 30 R. I. 488, 76 A. 273; *McCarthy* v. *Aldermen, Central Falls,* 38 R. I. 385, 95 A. 921; *Garvin* v. *McCarthy,* 39 R. I. 365, 97 A. 881; *Girouard* v. *Board of Police Commissioners,* 52 R. I. 47, 157 A. 199; *Kavanaugh* v. *Paull,* 55 R. I. 41, 177 A. 352. As a result of our consideration, we are of the opinion that the last word in the section, "preferred", should be interpreted in the same way as the word "made" would be if it were used instead; and that the "charges" there referred to as "preferred" should be interpreted as the same charges which are mentioned, just a few lines above, in the expression "charges made in writing to said city council."

It therefore is our opinion that the last part of the section should be construed and applied in the same way as it would be if it had been phrased thus: "and all such removals shall be by the mayor, upon order of the city council based upon charges, which shall have been made in writing to the city council at any meeting thereof, and of which the officer, against whom said charges were made, shall have had notice, and on which he shall have had opportunity to be heard before said city council at its next regular meeting after the meeting held when said charges were made to said city council."

In the records before us there is no proof that any charges in writing against the officer were made to the city council before the time when the meeting was held at which a hearing upon the charges was held. We therefore are of the opinion that the council had no jurisdiction, under the statute, to proceed with the hearing at that meeting.

The petitioner's attorney contended before the city council and has contended before us that, in order to comply with

the statute, the *council* must cause legal service of notice, of the pendency of the charges, to be made upon the police offi-' cer against whom the charges were made. But it is our opinion that the requirements of the statute, as to notice to the accused officer of the charges as made to the city council, have been substantially satisfied by the council, in view of the special circumstances of the case which are not in dispute.

To satisfy the fundamental requirements of "due process", the notice must be such and given to the accused officer at such time as will give him reasonable information of the charges against him and reasonable time for preparation to present his defense thereto at the meeting of the council when he is given an opportunity to be heard thereon. But the application of strict technical rules of procedure, such as are applicable in criminal prosecutions, is not called for in such a case as this. *Reynolds* v. *The Mayor & Aldermen,* 23 R. I. 370, 372; *Girouard* v. *Board of Police Commissioners, supra,* at page 46.

In the instant case these fundamental requirements were satisfied. At the meeting when the charges were made in writing to the city council, the petitioner was present, with his attorney, having had information that the charges would then be made. He heard them read and entered a special appearance and objected to a hearing on them at that meeting. If the hearing on them had been postponed to the next regular meeting of the council and they had been fairly heard at that later meeting, at which he had been given a reasonable opportunity to be heard in his own defense, all requirements would have been satisfied, including those set forth in the statute.

This procedure was not followed and the present proceeding by petition for a writ of *certiorari* has intervened. In our judgment it is now in the interest of all concerned, including the public, that the charges should be promptly heard and determined. We therefore hold, in view of the special cir-

cumstances of this case, that the charges already made in writing to the city council may properly be heard and determined at its next regular meeting after the filing of this opinion.

It is ordered that such parts of the records of the meeting of the city council of the city of Cranston on February 18, 1938 as set forth the hearing of charges against William E. Kelley and the vote ordering his removal from office as a member of the permanent police department of said city be quashed.

*Edward M. Sullivan,* for petitioner.

*Edward W. Day,* City Solicitor, for respondents.