**Reverend Herman L. DRISKELL et al.,
Plaintiffs-Appellants,**

v.

**Honorable Edwin W. EDWARDS,
Governor, State of Louisiana, etc.,
et al., Defendants-Appellees.**

**No. 74–4020.**

United States Court of Appeals,
Fifth Circuit.

Sept. 5, 1975.

---

Jerry L. Finley, Monroe, La., for plaintiffs-appellants.

Robert G. Pugh, Sp. Asst. Atty. Gen., Shreveport, La., Kenneth W. DeJean, Asst. Atty. Gen., State of Louisiana, Baton Rouge, La., for defendants-appellees.

Before BROWN, Chief Judge, and GODBOLD and CLARK, Circuit Judges.

JOHN R. BROWN, Chief Judge:

This much-traveled case comes to us as an appeal from the determination by a single district judge that the constitutional attack before him did not need to be heard by a three-Judge Court because the question presented was insubstantial and the case inappropriate for injunctive relief. We reverse.

Act 2 of the 1972 Louisiana Legislature called a convention to convene January 5, 1973 and frame a new state constitution. One delegate was to be elected from each legislative district and a number of others were to be appointed by the Governor—some to represent special interest groups and others from the public at large at his discretion.[1] One hundred and five delegates were elected and the remaining twenty-seven were appointed.[2]

When the convention closed on January 19, 1974 its business was complete. A proposed constitution was ready to be laid before the people for popular ratification in a state-wide election to be held on April 20, 1974.

On April 5, some two weeks before the election, the appellants filed this action. They sought a declaratory judgment, 28 U.S.C.A. § 2201, that Act 2 providing for the convention was void because the method of delegate selection did not comply with the "one person, one vote" doctrine and to enjoin the April 20 election. In addition, they asserted that under 28 U.S.C.A. § 2281[3] this claim must be heard by a three-Judge Court.

1. Of the twenty-seven non-elected delegates 15 were to be appointed at large and of the remainder one each to represent industry, labor, education, civil service, wildlife and conservation, law enforcement, the judiciary, the professions, consumers, agriculture, youth and racial minorities.

2. Appellants assert in their post-argument brief that the Governor also appointed others to replace delegates who were elected but unable to serve.

3. 28 U.S.C.A. § 2281 provides in pertinent part:

"An interlocutory or permanent injunction restraining the enforcement operation or execution of any State Statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board of commission acting under State statutes, shall not be granted by a district court or judge thereof upon the ground of unconstitutionality of such statute unless the application therefore is heard and determined by a district court of three judges under Section 2284 of this title."

The Supreme Court has held that the three-Judge Court requirement is no less applicable when a state constitution rather than a state statute or administrative order is involved. *American Federation of Labor v. Watson,* 1946, 327 U.S. 582, 592–93, 66 S.Ct. 761, 766, 90 L.Ed. 873, 879–80. Here, the statute calling for a constitutional convention is attacked and sought to be enjoined. By doing so, of course, appellants call into question the constitution passed pursuant to it.

In a memorandum opinion and order dated April 10 the District Judge (i) held that no three-Judge Court was necessary because the federal constitutional question presented was insubstantial, (ii) injunctive relief was inappropriate because of the potential irreparable injury to the State represented by a wasted expenditure of several million dollars and (iii) granted the defendant state officials' motion for summary judgment.

Having lost the first round, appellants applied to Justice Powell, the Circuit Justice for the Fifth Circuit, for an injunction against the impending election. This application was denied April 18. On April 23, three days after the election,[4] a similar application by telegram was made to Justice Douglas. Once again injunctive relief was denied.

Appellants next petitioned the Supreme Court for a writ of certiorari. In response, the Court vacated the judgment of the District Court and ordered that Court to enter a new decree from which an appeal could be taken to the Court of Appeals—the time to do so having elapsed. This action cannot be construed to mean more than that the Court of Appeals was the proper court to entertain the appeal. *See Wilson v. City of Port Lavaca,* 1968, 391 U.S. 352, 88 S.Ct. 1502, 20 L.Ed.2d 636, cited by the Court in its order. And we so treat it. In accordance with the Supreme Court's direction the District Judge entered a new decree from which this appeal is taken.

Appellants make only one assertion that must be answered by us on this appeal. And that is whether the District Judge was correct in his determination that no three-Judge Court was necessary because the question presented was insubstantial. Although in doing so we fear we fly in the face of common sense, important practical considerations and the all but crystal clear state of the law itself, we must reluctantly conclude that the District Judge was wrong.

Our difficulty is that the Supreme Court has defined what constitutes an insubstantial federal question for purposes of deciding whether a three-Judge Court is necessary not once but several times in the strongest possible terms. The height of the hurdle that must be jumped can best be gauged by the following language from *Goosby v. Osser,* 1973, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36, 42:

"Constitutional insubstantiality for this purpose has been equated with such concepts as 'essentially fictitious,' *Bailey v. Patteson,* 369 U.S. 31, 33, 82 S.Ct. 549, 551, 7 L.Ed.2d 512 (1962), 'wholly insubstantial,' ibid, 'obviously frivolous,' *Hannis Distilling Co. v. Baltimore,* 216 U.S. 285, 288, 30 S.Ct. 326, 327, 54 L.Ed. 482 (1910), 'obviously without merit,' *Ex parte Poresky,* 290 U.S. 30, 32, 54 S.Ct. 3, 4–5, 78 L.Ed. 152 (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous, previous decisions which merely render claims of doubtful or questionable merit do not render these insubstantial for the purposes of 28 U.S.C. Sec. 2281. A claim is insubstantial only if 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' *Ex parte Poresky,* 290 U.S. at 32, 54 S.Ct. 4."

If left to our own devices on a penetrating analysis of the factors involved we might well conclude that the contention that a convention whose only duty is to draw up a constitution and propose it for ratification by the people must be chosen in accordance with "one person,

---

**4.** The proposed constitution submitted as a package on a take-it-or-leave-it basis was adopted by a vote of 360,980 for, with 262,676 against.

one vote" principles is unsound, indeed very unsound. But we could not in good faith say that such unsoundness "clearly results from the previous decisions of this [the Supreme] Court."[5]

*Baker v. Carr,* 1962, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, and its progeny do not themselves give us the answer. We know that

> [A]s a general rule, whenever a state or local government decides to select persons by popular election to perform governmental functions, the Equal Protection Clause of the Fourteenth Amendment requires that each qualified voter must be given an equal opportunity to participate in that election * * *.

*Hadley v. Junior College District,* 1970, 397 U.S. 50, 56, 90 S.Ct. 791, 795, 25 L.Ed.2d 45, 50–51. The Court has held a number of bodies to be ones that perform governmental functions—Congress, *Wesberry v. Sanders,* 1964, 376 U.S. 1, 84 S.Ct. 526, 11 L.Ed.2d 481, state legislatures, *Reynolds v. Sims,* 1964, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506, county commissioners court, *Avery v. Midland County,* 1968, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45, and public junior college board of trustees, *Hadley v. Junior College District, supra.* Unfortunately none of these cases[6] define governmental functions in such a way as to so wholly preclude the applicability of "one person, one vote" principles to a constitutional convention as to make a contention to the contrary "obviously without merit." *Ex parte Poresky, supra.* Equally important, no one could challenge that a statutorily created constitution commis-

sion is engaged in what has to be a "governmental function" of the highest order. But that does not really answer the question whether from an operational sense is the function performed by such an assembly of nature properly calling for formalized participation by all segments through a fairly apportioned body.

We can find only one pronouncement from within the Supreme Court squarely on point. In *Fortson v. Toombs,* 1965, 379 U.S. 621, 626, 85 S.Ct. 598, 601, 13 L.Ed.2d 527, 531, Justice Harlan, joined by Justice Stewart in a special concurring-dissenting opinion, stated

> "As to the provisions forbidding submission to the electorate of a legislatively proposed new state constitution, I can find nothing in the Fourteenth Amendment, elsewhere in the Constitution, or in any decision of this Court, which requires a State to *initiate* complete or partial constitutional change only by some method in which every voice in the voting population is given an opportunity to express itself. Can there be the slightest constitutional doubt that a State may lodge the power to initiate constitutional changes in any select body it pleases, such as a committee of the legislature, a group of constitutional lawyers, or even a 'malapportioned' legislature . . . ."

But this is no holding.

Still, it is our view that the search need not stop with the United States Reports, Supreme Court Reporter or Lawyer's Edition—First or Second. In spite of its almost airtight language the

---

5. Indeed, any assertion that an unequal protection taint can be cured by popular ratification has already been precluded by the Supreme Court. *See Lucas v. Colorado,* 1964, 377 U.S. 713, 736–37, 84 S.Ct. 1459, 1473–1474, 12 L.Ed.2d 632, 647–48; *West Virginia State Bd. of Educ. v. Barnette,* 1943, 319 U.S. 624, 638, 63 S.Ct. 1178, 1185, 87 L.Ed. 1628, 1638.

6. However, in *Wells v. Edwards,* M.D.La.1972, 347 F.Supp. 453, 455, affirmed 409 U.S. 1095, 93 S.Ct. 904, 34 L.Ed.2d 679, Judge Gordon West speaking for a three-Judge Court stated

> ". . . But in Hadley, as in every other case that we can find dealing with the question of apportionment, the 'governmental functions' involved related to such things as making laws, levying and collecting taxes, issuing bonds, hiring and firing personnel, making contracts, collecting fees, operating schools, and generally managing and governing people. In other words, apportionment cases have always dealt with elected officials who performed legislative or executive type duties . . . ."

Supreme Court surely expects to be read in some way more intelligent than just total literalism. An especially fertile imagination is not necessary to conceive of legal questions whose insubstantiality while not clearly resulting from previous Supreme Court decisions must be obvious to all. Because we believe that the question before us on this appeal comes so close to being one of patently evident insubstantiality we, with the assistance of counsel, have searched high and low for cases on point—not for their precedential value but for guidance. Our search has not been particularly fruitful.

On the federal side, in one three-Judge Court opinion we have found some suggestion, although it is far from clear, that a state constitution must be proposed to the people by a body chosen in line with "one person, one vote" principles.[7] *Butterworth v. Dempsey,* D.Conn. 1964, 237 F.Supp. 302, 308.

State Court decisions muddy the waters even further. There are six state Supreme Court opinions that speak to the problem.

In three of them an attack on a constitutional convention similar to the one before us today was rejected. *West v. Carr,* 1963, 212 Tenn. 367, 370 S.W.2d 469, cert. denied, 378 U.S. 557, 84 S.Ct. 1908, 12 L.Ed.2d 1034; *Stander v. Kelley,* 1969, 433 Pa. 406, 250 A.2d 474, cert. denied, sub nom. *Lindsay v. Kelley,* 395 U.S. 827, 89 S.Ct. 2130, 23 L.Ed.2d 738; *Livingston v. Ogilvie,* 1969, 43 Ill.2d 9, 250 N.E.2d 138. We are informed by counsel that a fourth, an unreported Louisiana Supreme Court opinion, also held "one person, one vote" principles inapplicable to constitutional conventions.

The other three, two of them advisory opinions to the Governor or legislature of Rhode Island, directed that the selection of delegates to the convention must be by popular election. *Jackman v. Bodine,* 1964, 43 N.J. 453, 205 A.2d 713; *Opinion to the House of Representatives,* 1965, 99 R.I. 377, 208 A.2d 713; *In re Constitutional Convention,* 1935, 55 R.I. 46, 178 A. 433. We find no mention of the Fourteenth Amendment in any of the opinions requiring popular election. On the other hand, in *Stander v. Kelley* and *West v. Carr,* neither of which piqued the interest of the Supreme Court sufficiently to grant certiorari, the equal protection argument was made and it was rejected.

■ None of these cases, of course, are binding on us and they are not sufficiently persuasive to simplify our task. That throws us back on our own powers of analysis. And those powers tell us that although the convention passed no laws, levied no taxes, ran no schools and created no binding obligations for the state of Louisiana, we cannot say that the question can surmount the *Goosby-Poresky* hurdle, expressed as it is in stringent terms. The question may be constitutionally insubstantial but this insubstantiality is not so obvious as to make a three-Judge Court determination unnecessary.

Because we address solely the question of the need for a three-Judge Court our views on the ultimate problem have no effect as stare decisis law of the case or otherwise, on either the three-Judge Court or another panel of this Court if the appeal comes here rather than to the Supreme Court.[8] But we do wish to

---

7. In its Judgment the Court ordered "[a]ppropriate provision for amending the state constitution not in contravention of the United States Constitution." 237 F.Supp. at 305. The Court explained that the order "contemplates . . . the General Assembly . . will enact . . . an appropriate statute for election of delegates to a Constitutional Convention at a special or regular election . . . ." *Id.* at 308. The Court had earlier found the Connecticut legislature to be malapportioned. 229 F.Supp. 754. This determination had been affirmed by the Supreme Court in memorandum opinion. *Pinney v. Butterworth,* 1964, 378 U.S. 564, 84 S.Ct. 1918, 12 L.Ed.2d 1037.

8. No one can predict now who should review this case on its next appearance *See Sumter County Democratic Executive Committee v. Dearman,* 5 Cir., 1975, 514 F.2d 1168, at 1170 [1975, at 6119]. *See also MTM, Inc. v. Baxley,* 1975, 420 U.S. 799, 95 S.Ct. 1278, 43 L.Ed.2d 636; *Gonzalez v. Employees Credit Union,*

make clear that there is not the slightest suggestion of a whisper intimating that the system fashioned by Louisiana is constitutionally defective and that this new constitution will be struck down. What—and all—we hold is that the three-Judge Court statute which has outlived its need and which creates problems daily beyond the administrative imagination of Justices and Judges compels that another group of three Judges—not this panel of three Judges—must first decide the issue.

The District Court's order is vacated and the case is remanded for a determination by a three-Judge Court whether Act 2 of the 1972 Louisiana Legislature violates the Fourteenth Amendment in the particulars charged.[9]

Remanded.

1975, 419 U.S. 90, 95 S.Ct. 289, 42 L.Ed.2d 249.

**9.** Since the Chief Judge is a member of the panel, no formal request to convene a three-Judge Court is necessary. The Court will be convened by separate order simultaneously with the release of this opinion.