EDWARD P. MORGAN *et al. vs.* HAROLD C. THOMAS *et al.*

MAY 20, 1964.

PRESENT: Condon, C. J., Roberts, Powers and Joslin, JJ.

JOSLIN, J. This is a petition for certiorari brought to review the action of the respondents, in their capacities as members of the personnel appeal board of the city of Cranston, affirming the grounds of suspension upon which the mayor indefinitely suspended each of the petitioners from the police force of that city and changing in each instance the disciplinary action appealed from by fixing the period of suspension at 90 days without pay and further penalizing each of the petitioners by ordering 350 extra hours of duty without pay at the discretion of the appropriate authority. The writ was issued and in compliance therewith the pertinent records have been certified to this court.

It appears that petitioners as directors of the Fraternal Order of Police, Cranston Lodge No. 5, hereinafter referred to as F. O. P., attended a meeting of its board of directors held on the morning of September 18, 1963 at which it was unanimously voted to recommend to members of the lodge

that they refrain from taking the police promotion tests scheduled for the next day. Later that morning the chief of police who had earlier been informed by petitioner Manocchia of the action taken at the meeting became aware that a notice on the F. O. P. letterhead as hereinafter set forth was posted on the official order board.

"Sept. 18, 63

"Dear Brothers:

"The Board of Directors of Cranston Lodge 5, F.O.P. have met today and voted unanimously to recommend to all Brother Members that are scheduled to take the Police Promotion Tests not to take these tests.

"This is a Boycott.

"The Board of Directors are to ask the City Council to investigate the testing proceedures [sic].

"Fraternally yours,

[signed] Edward R. Manocchia
Edward R. Manocchia
Secretary"

The chief directed its removal, but took no action when later that day he saw the same notice posted on the assigned F. O. P. bulletin board which is located in the roll-call-room of the police station. While access to that room is available to newspaper reporters and attorneys as well as police officers, the general public is denied entrance and a sign over the door advises that admission is limited to members of the department.

The following morning the chief was directed by the mayor to come to his office with the notice, the latter having learned of it through an article in a morning newspaper. This the chief did. The petitioners were then called before the mayor and told that they would be suspended unless there were circumstances which they could bring to his attention which might change his opinion. Each of the peti-

tioners stood mute. Thereafter they were served with suspension notices dated September 19, 1963 reading as follows:

"Dear Sir:

"Effective this date, you are hereby suspended from the Police Department of the City of Cranston until further notice on the grounds of insubordination and conduct detrimental to the best interests of the Police Department and the City of Cranston, based on your actions publicly urging Cranston Police Officers to 'boycott' written examinations for Police Department promotions.

"This notice and the order set forth herein are pursuant to the Charter of the City of Cranston and Section 14.07 thereof.

"[signed] James DiPrete Jr.
James DiPrete, Jr.
Mayor"

Appeals from those suspensions were duly presented to the personnel appeal board, which after public hearings affirmed the grounds of suspension but changed the punishments.

The petitioners ask that the board's decision be quashed and that their reinstatement be ordered with full pay and allowances from the date of their suspensions. Their requests are based on several grounds, but we need consider only their contention that there was no evidence of probative force justifying the board's action.

The petitioners are permanent members of the police department and have civil service status. While the overriding purpose of the type of legislation giving them that status is, as we said in *Masyk* v. *Parshley*, 94 R. I. 282, 288, 180 A.2d 314, 318, "to secure an efficient public service for the benefit of the people as a whole," it is also true that another purpose is to protect the persons within the service from the arbitrary action of those holding the disciplinary power. *Bergeron* v. *Batchelor*, 46 R. I. 224.

208

In order to secure that protection, sec. 14.07 of the Cranston charter entitles one charged, as petitioners have been, to "notice in writing of the grounds of the proposed action and an opportunity to be heard thereon by the personnel appeal board." At such a hearing the board sits as a quasi-judicial body and is bound "by the fundamental principles that are binding upon all judicial bodies." *Hanna* v. *Board of Aldermen,* 54 R. I. 392, 396.

One of those fundamental principles requires that "evidence must be presented to support the charge before it can lawfully be sustained and an officer removed [punished] therefor." *McCarthy* v. *Board of Aldermen,* 38 R. I. 385, 390.

We first examine the record as to petitioners other than Manocchia. This being a proceeding in certiorari, we do not weigh the evidence but confine our examination to the record in order to determine whether it contains competent evidence upon which the board could conclude that petitioners publicly urged a boycott of the examinations. We find it barren of any evidence of probative force indicating that individually or through board action the petitioners participated in, agreed upon, or knew of the posting of the boycott notice, or that they disclosed directly or indirectly to the press the action taken by the F. O. P. board of directors. This evidentiary void is accented by the testimony of the mayor who considered "irrelevant" whether they sent letters urging a boycott or gave statements to the press. What was crucial to his action in indefinitely suspending these petitioners were their votes at the board of directors' meeting which he testified "constituted the public urging of Cranston police officers to boycott the written examination for police department promotions. I feel his [petitioner Schultz] action, like the action of the other six, warranted suspension." Evidence which establishes no more than a vote at a nonpublic board of directors' meeting in favor of recommending a boycott does not support a find-

ing of guilt to a charge of publicly urging a boycott and as to these petitioners the action of the board should be quashed.

We come now to petitioner Manocchia. As to him the board made no finding that he either posted the notice or disclosed its contents to the press, although there is evidence, confused, indefinite and unclear though it may be, that he did both. Not only is its decision devoid of any such findings, but it neither sets forth the evidentiary matter upon which it found the charges to have been established nor makes known the factual basis upon which it concluded that this petitioner was guilty as charged. See *Tillotson* v. *City Council,* 61 R. I. 293, 295. Instead the only reference in its decision to the extensive testimony is found in the cryptic statement "the board hereby affirms the grounds of suspension * * *."

Although that recital by the board is not in as precise or specific language as is desirable, we can nonetheless within the limitations set out in *Yellow Cab Co.* v. *Public Utility Hearing Board,* 79 R. I. 507, 511, fairly and reasonably by implication identify the grounds which it affirmed as being those testified to by the mayor as causing the indefinite suspension. These, the mayor testified, were not limited to urging a public boycott, but included also as additional grounds the sending by petitioner of a letter to the city council requesting an investigation of the examination procedure and a statement by him to the press that the testing procedures were illegal. In the words of the mayor, the grounds of suspension which the board affirmed were "* * * in the overall the combination of all of these things, I felt very strongly, justified their suspension" and all of which grounds, "when taken together, they constituted insubordination."

These additional grounds which at least in part led to the board's affirmation, although they might be deemed to constitute insubordination or detrimental conduct, were not

included in the mayor's specification of charges against this petitioner. Both by sec. 14.07 of the charter and decisional law, *Davis* v. *Cousineau,* 97 R. I. 85, 196 A.2d 153, *McCarthy* v. *Board of Aldermen, supra, Norton* v. *Adams,* 24 R. I. 97, this petitioner was entitled to notice in writing of the grounds of the proposed action and a specification of the charges against him sufficient to afford an opportunity to prepare a defense. While it was not required that those charges as stated in *Reynolds* v. *Mayor and Aldermen,* 23 R. I. 370, 372, "be framed with the technical exactness required in criminal pleading," this petitioner should have been informed of all the specifications upon which the charges of insubordination and detrimental conduct were based. The denial to him of that right taints the proceedings before the personnel appeal board with illegality and justifies a nullification of the penalty imposed. *Norton* v. *Adams, supra; Reynolds* v. *Mayor and Aldermen, supra.*

As to each petitioner, the petition for certiorari is granted, the record of the decision affirming the grounds of the suspension and fixing the period of suspension at 90 days without pay and ordering 350 extra hours of duty without pay at the discretion of the appropriate authority is quashed, the respondents are ordered to reinstate the petitioners forthwith as patrolmen in the police department of Cranston, if they have not already been reinstated, and to award them full pay and all allowances for any period of suspension on or after September 19, 1963 or for extra hours of duty performed without pay; and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

*Gallogly, Beals & Tiernan, David F. Sweeney,* for petitioners.

*Edward W. Day, Jr.,* for respondents.