217 A.2d 676.

GEORGE W. CARROLL, JR. *vs.* HARRY GOLDSTEIN *et al.*

MARCH 21, 1966.

PRESENT: Roberts, C. J., Paolino, Powers and Joslin, JJ.

Powers, J. This petition for certiorari seeks to quash a decision of the respondents, sitting as a hearing board, which resulted in the petitioner's reduction in rank from that of a sergeant to a patrolman in the Providence police department. We issued the writ and in response to its mandate the respondent board, hereinafter called the board, duly certified the pertinent records to this court for our examination.

It appears therefrom that petitioner has been a member of the Providence police department for over seventeen years, for more than twelve years within the traffic bureau and on October 28, 1964 had been a sergeant within said bureau for some five years.

An investigation by a superior officer of petitioner's conduct while on duty during the evening of October 28, 1964 led the Providence chief of police to prefer charges against petitioner with the public safety commissioner, who ordered a hearing thereon pursuant to the provisions of P. L. 1951, chap. 2723, sec. 16, being sec. 67 of the city charter.

Thereafter on December 18, 1964, petitioner received written notice from the commissioner's office that he was to appear before the board and answer the following charges: Neglect of duty and conduct tending to cast disrepute on

the department, as set forth in Rule 1, sec. 3, of the general rules governing the police department.

The charge, neglect of duty, was predicated on the following specification:

"In that Sgt. George W. Carroll, Jr. on the evening of October 28, 1964, in the City of Providence, during his investigation of an alleged automobile accident, did fail to ascertain whether an accident had in fact occurred, making no effort to see or question the principals involved."

The charge, tending to cast disrepute on the department, was predicated on the following specifications:

"In that Sgt. George W. Carroll, Jr., on the evening of October 28, 1964 did leave his post and, in fact, did leave the confines of the City of Providence on unauthorized business without first having obtained permission from his commanding officer.

"In that Sgt. George W. Carroll, Jr. on October 28, 1964, did make a false statement in connection with an official accident report dated October 28, 1964, to wit, that report was taken at scene of accident."

A hearing was held on said charges by the board January 25, 1965 and continued for argument to February 1, 1965. At the outset of the hearing counsel for petitioner requested the public safety commissioner to disqualify himself as a member of the board and, when the commissioner declined, formally moved that he be disqualified by the remaining members. Further, petitioner's counsel requested permission to examine the commissioner as to his possible prejudice and this request was denied, as was his motion to disqualify.

From the written and oral testimony, including that of petitioner, it appears that for the purpose of motorcycle patrol, Providence is divided into two sections, one being the southern half of the city and the other the northern, to which petitioner was assigned. It also appears that when

the lieutenant in charge is absent for meals or other causes, one of the sergeants takes charge of the station and the other patrols the entire city.

On the evening of Wednesday October 28, 1964, Lt. William R. Paniccia was the superior officer in charge of traffic and the two sergeants under him were petitioner and Walter M. Campbell assigned to the southern section. It is admitted that the lieutenant went to dinner about 7 p.m. leaving petitioner as the officer in charge of the traffic bureau.

It is petitioner's testimony that he was relieved by Sgt. Campbell at 8:15 p.m. and was on his way out to cover a detail at the auditorium on North Main street when he was accosted in the station by Anthony Leoni whom he knew as a body repair man who had recently opened his own shop under the name of Brookway Collision Service.

The petitioner further testified that Leoni asked him to accept a report of an accident in which one of his customers was involved that evening; that he told Leoni he was pressed for time, that the report was not complete but that he would accept it as was and telephone later in the evening for further details; and that he called Leoni about 9:30 from the traffic bureau and obtained all necessary information, except the exact location on River Drive where the alleged accident had occurred. The location being within his assigned patrol, petitioner drove his motorcycle to River Drive and determined that the accident had taken place opposite Narragansett Electric Light Co. pole #4, although how such determination was made he did not say. He then returned to the station and completed the report.

As made out by petitioner, it describes the make and year of the two cars involved, the names, occupations, ages and addresses of their operators and the name, age and address of a female passenger in one of the cars. It gives a reader the impression that the information was obtained from the persons involved and indeed states that the investigation

was made at the scene. The evidence clearly establishes that petitioner had no personal knowledge that an accident had actually taken place.

Lieutenant Vincent J. O'Connell of the detective division testified for the prosecution that on the evening of October 28, 1964 he and Lt. Stanley P. Andrukiewicz were carrying on an investigation arranged through the cooperation of the Cranston police which required them to keep Brookway Collision Service, located on Navaho street off Niantic avenue in the city of Cranston, under surveillance; that about 10:45 he observed petitioner drive up on his motorcycle, enter the Brookway premises and talk with Leoni apparently about a yellow paper which petitioner removed from his pocket; and that petitioner and Leoni were in conversation for some four or five minutes, after which petitioner left.

The lieutenant also testified that he observed on the Brookway premises the two motor vehicles mentioned in petitioner's report as having been involved in an accident that evening. They were a 1958 Buick sedan bearing Rhode Island registration DD-85 to Domenick T. DiCenzo and a 1964 Pontiac Tempest coupe bearing Rhode Island registration HN-801 to Manuel L. Cabral, Jr. Moreover, Lt. O'Connell testified that he had Brookway Collision Service under surveillance the previous evening and at that time observed HN-801 on Brookway's premises in the same damaged condition that he observed it to be on the following night when it was supposed to have been in an accident on River Drive. Significantly DiCenzo and Cabral were named as operators of the cars in the report made out by petitioner. The name of the female passenger in R. I. HN-801, as contained in the accident report, was Marion Smith.

Called to testify by the prosecution, Miss Smith denied that she was a passenger in that car and further denied that she was in any accident. Her testimony in this regard was

identical with that which she had given, not under oath, to Captain Walter A. McQueeney during the investigation which led to the preferment of charges against petitioner.

Domenick T. DiCenzo, alleged operator of the 1958 Buick bearing registration DD-85, was also questioned by Captain McQueeney during the latter's preliminary investigation and made statements not under oath corroborative of the information contained in petitioner's report. Called to testify at the hearing, however, he refused to answer on the grounds of self incrimination.

Manuel L. Cabral, Jr., the other alleged operator, was not questioned by Captain McQueeney for the reason that he could not be located, and was not called as a witness apparently for the same reason.

The petitioner in his testimony offered as an explanation for his visit to Leoni at 10:45 on the evening of October 28 that he had prepared an extra copy of the accident report on yellow paper for Leoni; that he decided to take it to him because he was in the neighborhood responding to an accident involving personal injury on the Dennis J. Roberts Freeway; that this area is located in the southern section in Sgt. Campbell's post; that he was responding because Sgt. Campbell was tied up in the station and it was petitioner's duty to cover the entire city in such circumstances; that because of a subsequent radio call received before he could reach the scene of the accident on the Freeway the requirement to cover it ceased to exist; and that he took advantage of the proximity to Brookway Collision Service to deliver the extra copy of his report to Leoni.

Throughout the preceding investigation and the hearing before the board, petitioner insisted that he was not aware that the Brookway body shop was located in Cranston.

By a majority vote, the board found petitioner guilty on all counts, but felt that the charges as proved did not warrant dismissal and noted instead that petitioner be not dismissed but disciplined by reduction in rank.

From this decision, petitioner seeks review by way of certiorari. We issued the writ and the board moved that the petition be dismissed as having been improvidently issued. We denied this motion without prejudice, however, to the board to renew it when the cause was heard on its merits. This, the board did at length in its oral argument and brief. Consistent with orderly procedure we deem it desirable first to consider the argument of the board with respect to its motion.

The board points out that the common-law writ of certiorari is not one of right but rather is addressed to the discretion of this court, citing *White* v. *White,* 70 R. I. 48. Furthermore, it urges that the court should not exercise its discretion favorably to a petitioner where no necessity therefor exists. In the instant case, the board contends there is no necessity for the reason that the applicable statute cited *supra* provides for a hearing on written charges only when a police officer has been cited for conduct which, if proved, would warrant his dismissal from the department. Continuing, the board argues that its decision did not result in dismissal, and because it resulted merely in disciplinary action petitioner should not be heard to complain. This is so, it is argued, because there is no statutory hearing required to discipline a police officer by reducing him in rank. The commissioner could, as we understand the board, have concluded on his investigation that petitioner's conduct did not warrant dismissal, only disciplinary action such as reducing him from sergeant to patrolman, and entered such an order without referring the case to the board.

Whether there is merit in this argument we need not inquire at this time, since that is not what the commissioner did. He ordered a hearing, judicial in nature. and the decision resulting therefrom being unfavorable to the accused is a proper subject for review in this court by way of certiorari. *Garvin* v. *McCarthy,* 39 R. I. 365.

There Garvin, a member of the Woonsocket police department, was suspended for thirty days without pay. The suspension was ordered by the board of police commissioners without affording Garvin a hearing on charges preferred in writing at which he might be represented by counsel. The city charter, as here, specifically authorized the right to a quasi-judicial hearing only when conviction would result in dismissal. The respondents in the Garvin case argued that since he had not been dismissed but only suspended, Garvin was not entitled to the hearing for which provision was made in the city charter.

This court, referring to the Woonsocket rules and regulations governing the duties and conduct of police officers, observed that by Rule Nine, 1: " 'Any member of the Police Force may be punished by the Board of Police Commissioners, in its discretion, either by reprimand, forfeiture of pay for not exceeding thirty days for any one offence, by being reduced in rank, or by dismissal from the force, on conviction of any one of the following offences, to wit:' Then follows a list of the offences, including 'conduct unbecoming an officer.' "

. The court then held: "This language certainly presupposes that something more is necessary in order to deprive an officer of his pay for thirty days than the exercise of a bare authority unsupported by sworn evidence."

An examination of the rules governing the Providence police department discloses that in rule 1, sec. 2, it is provided in pertinent part: "The Commissioner has the power under the law to punish any member for any failure to so observe and obey, *after hearing,* by suspension, fine, reduction in rank, forfeiture of pay, or other appropriate action. (italics ours)

Thus, save for the make-up of the general assembly created quasi-judicial forums, the basic circumstances of the case at bar parallel those in *Garvin* v. *McCarthy, supra.*

558

Pertinent in the broad sense, this court in *Bergeron v. Batchelor*, 46 R. I. 224, citing the *Garvin* case with approval observed: "The protection of the public by an efficient police force is the paramount object of the act. Secondary thereto is the intention to protect members of the police force from arbitrary action by the board; not to create a life tenure of office, but to prevent the demoralization of the force by frequent and unfair changes."

Indeed this court has consistently indicated a conviction that the maintenance of morale by providing against indiscriminate punishment of police officers through sanctions not amounting to dismissal is also in the public interest. See *Gartsu v. Coleman*, 82 R. I. 103, *Gartsu v. Walsh*, 89 R. I. 256, and *Petrarca v. State*, 96 R. I. 210, 190 A.2d 477.

We are constrained to conclude therefore that respondents' motion to dismiss should be denied and consideration given to the merits of petitioner's several contentions.

He first contends that he was denied a full, fair and impartial hearing by reason of the board's refusal to disqualify Commissioner Goldstein. It appears that at the time of the investigation which led to the preferring of charges, Commissioner Goldstein was an assistant city solicitor and in this capacity was privy to information that disqualified him from participating as a member of the board. This skeletal circumstance would clearly not constitute prejudice. However, petitioner argues that he was not permitted to question the commissioner as to what prior knowledge he had of the case and that this refusal constitutes error, citing *Narragansett Racing Ass'n, Inc. v. Kiernan*, 59 R. I. 90, and *Moore v. State*, 118 Ohio St. 487.

These cases are of no assistance to petitioner. They stand for the proposition that where an accused is prepared to offer evidence tending to disqualify, he should be permitted to go forward with such evidence, compiling a record on which a reviewing court could pass upon a decision denying

disqualification. Certainly the cited cases do not stand for the proposition that prior knowledge constitutes prejudice and indeed the authorities are all to the contrary. *State ex rel. Nowakowski* v. *Lockridge,* 6 Okla. Crim. 216; *Houghton* v. *Baillargeon,* 53 R. I. 475; *Mesirow* v. *Mesirow,* 59 N.E.2d 320; *Garrett* v. *State,* 187 Miss. 441, and *Atlantic & B. Ry. Co.* v. *Mayor & Council of Cordele,* 128 Ga. 293. Nor do they so much as suggest that an accused is entitled to a fishing expedition predicated on mere suspicion that prejudice exists.

Here, the record discloses that petitioner had no evidence of prejudice which might be presented to the board in passing on the motion to disqualify one of its members. Although offered the opportunity to do so, he presented none and, contrary to his assertions, the conduct of the commissioner in the course of the hearing as gathered from the transcript reveals none.

The petitioner next contends that there is no evidence whatsoever of guilty knowledge which, he insists, is essential to support a finding of guilt on specifications I and II of the second offense with which he was charged. He makes no argument in this regard with respect to the second specification, namely, that he made a false statement in making out the accident report. We do not comprehend how he could.

He does, however, argue that with regard to the first specification of the second charge, namely, leaving the confines of Providence while on duty without permission of a superior officer, requires scienter and there was no evidence that he was aware of having left the city. The board argues that in the consideration of conduct allegedly violative of department regulations, scienter is not an essential requirement and that we should so hold. We do not perceive that, in the circumstances of this case, we are called upon to make such a decision. From all of the evidence, including peti-

tioner's testimony, the board was warranted in drawing the inference that, contrary to his denial, petitioner was aware that his visit to the Brookway body shop required him to leave the city of Providence. In our judgment the record supports the board's findings on both specifications predicating the second offense with which he was charged.

It is petitioner's penultimate contention that even though the record supports a conviction as to the specification on which the first charge, neglect of duty, is predicated, his failure to ascertain whether an accident had in fact occurred and his lack of effort to see or question the persons involved do not constitute neglect of duty, for the reason that no such requirement is specifically contained within the prescribed rules and regulations. Rather, he argues, the precise requirement in such matters is set forth in Rule XI, par. 5, of the applicable governing rules, as follows:

> "Police officers shall make full reports of all cases of accidents and injuries to persons or property which come to their notice, and such reports shall be entered on the journal of the precinct. * * * They will collect the names and addresses of all persons who saw the accident or know particulars concerning it * * *."

Giving a strict and literal construction to the foregoing rule, petitioner argues that his conduct in the premises was in full compliance with his duty thereunder. We cannot agree, however, that said rule does not by a reasonable implication place on a police officer the obligation to make a conscientious determination that the report as compiled by him will reasonably conform to the facts of the matter. The subsequent importance which may very likely attach to the correctness of his report is so obvious as to require no discussion.

Lastly, petitioner contends that there is no legal and competent evidence to support a finding of guilty on any of the charges and specifications. His argument in this regard consists in part of a summary of the arguments previously con-

sidered and rejected and others so meritless as not to warrant a discussion which would unnecessarily lengthen this opinion.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records in the case are ordered returned to the respondent board with our decision endorsed thereon.

*Brown, Rosen & Gentile, Robert A. Gentile,* for petitioner.

*William E. McCabe, David J. Kehoe,* for respondents.