373 A.2d 176.

KENNETH L. WEEKS *vs.* PERSONNEL BOARD OF REVIEW OF THE TOWN OF NORTH KINGSTOWN *et al.*

MAY 13, 1977.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. This case comes before us on certification from the Superior Court pursuant to G.L. 1956 (1969 Reenactment) §9-24-27 and our Rule 6. We are asked to determine whether G.L. 1956 (1970 Reenactment) §45-20-1.1, which provides for a trial de novo in Superior Court for certain appeals by police officers, violates the doctrine of separation of powers by conferring on courts authority over executive or administrative functions. We conclude that the action from which such appeals are taken is judicial or quasi-judicial in nature and that accordingly the grant of authority for trial de novo is constitutional. As we proceed, we shall refer to the plaintiff, Kenneth L. Weeks, by his last name and the defendants, Chief of Police, Director of Public Safety, and the North Kingstown Personnel Board of Review as the "board" except where the actions of a specific individual are involved.

In April 1974 Weeks was a police officer in the town of North Kingstown. He was also under investigation by federal authorities for theft of certain materials from the

Naval Commissary at Davisville. Because of this latter status he was suspended from the force for 30 days commencing April 13, 1974. In the ensuing month the United States Attorney returned a criminal information against Weeks, and on May 13, 1974, the chief of police discharged him from the force. Subsequently, Weeks was acquitted of the charges and sought reinstatement to the force, but his request was denied. Thereafter, he demanded and was afforded a hearing before the North Kingstown Personnel Board of Review which on August 29, 1974 confirmed the decision dismissing him.[1] Approximately a month later Weeks appealed that decision by filing a complaint in the Superior Court.

The board moved to dismiss Week's complaint on the grounds that §45-20-1.1 unconstitutionally infringed on the executive power. Following a hearing on the motion to dismiss, the Superior Court justice certified the following question of law to this court:

> "IS TITLE 45, Chapter 20, Section 1.1, of the Rhode Island General Laws, 1969 as amended, unconstitutional in that it is a usurpation of and infringement upon the powers of the executive branch of the government and in violation of the Doctrine of Separation of Power of the Constitutions of the United States and State of Rhode Island and also Article III of the Rhode Island Constitution."[2]

### The Federal Constitutional Question

This facet of the pending inquiry needs little discussion. The fact that the United States Constitution establishes a tripartite federal government and guarantees to the states a republican form of government does not bear on the

---

[1] No fault is alleged concerning the procedural aspects of the hearing.

[2] Article III of the Rhode Island Constitution provides: "The powers of the government shall be distributed into three departments: the legislative, executive and judicial."

246

problem before us. The federal separation of powers doctrine does not determine the way in which states shall allocate state powers. Thus, the General Assembly could vest nonjudicial authority in the judiciary without impinging on the separation of powers doctrine under the Federal Constitution.

### The State Constitutional Question

When considering the propriety of de novo review, we must first determine whether the board or agency being reviewed was acting in an administrative or judicial capacity. For, while de novo review is generally precluded in the former instance, it can be allowed in the latter. *In re Stephens* v. *Unified School Dist. No. 500,* 218 Kan. 220, 546 P.2d 197 (1975); *Francisco* v. *Board of Directors,* 85 Wash.2d 575, 537 P.2d 789 (1975). It has long been established in Rhode Island that administrative proceedings to discipline or remove police officers for cause are judicial or quasi-judicial in nature. *Carroll* v. *Goldstein,* 100 R.I. 550, 217 A.2d 676 (1966); *Gartsu* v. *Coleman,* 82 R.I. 103, 106 A.2d 248 (1954); *Garvin* v. *McCarthy,* 39 R.I. 365, 97 A. 881 (1916). This is because the officer may not be discharged except upon a showing of cause.[3]

Moreover, a long line of cases recognizes the General Assembly's broad control in matters relating to the municipal operation of police and fire departments. *See Marro* v. *General Treasurer,* 108 R.I. 192, 273 A.2d 660 (1971), and cases cited therein. Certainly it is within the Legislature's power to prescribe the mode of appeal from a city or town's personnel board of review. Due to the judicial nature of the proceedings, the General Assembly could

---

[3]Section 2-5-17 of North Kingstown's Revised Ordinance (1974) specifies that a permanent employee who has been dismissed or demoted is to receive a written notice, which contains a statement "of the substantial reasons" for such action, and the employee then has a right to a hearing before the town's personnel board.

have provided for original suit in the Superior Court or any other court. *See In re Stephens* v. *Unified School Dist. No. 500, supra.* The Legislature's decision to provide for de novo review appeal does not make the proceedings before the administrative board any less judicial. *Civil Serv. Comm'n* v. *Matlock,* 205 Ark. 286, 168 S.W.2d 424 (1943).

Prior to the enactment of §45-20-1.1, police officers aggrieved by decisions of local police bureaus obtained review by way of certiorari to Superior Court. Public Laws 1948, ch. 2083. Section 45-20-1.1, however, is an indication that the General Assembly considered the discipline and removal of police officers sufficiently important to warrant a redetermination of fact and law by a trial court unfettered by possible prejudices that might exist at the municipal level. Professor Louis L. Jaffe, one of the foremost authorities on administrative law, concludes in his book on *Judicial Control of Administrative Action* that the Legislature should be free to vest the courts with de novo review of agency proceedings in those situations where the Legislature feels the special safeguards of the judicial process should be available. Generally courts defer to the factfinding role the Legislature has given to administrative agencies, but "no such constraint logically should exist where the legislature itself has granted the courts a fact-finding role in their review of administrative action." *Matanuska-Susitna Borough* v. *Lum,* 538 P.2d 994, 1001 (Alas. 1975).

We have examined numerous cases dealing with a purported unconstitutional grant of nonjudicial functions to the judiciary. Some which seem directly on point and hold such a grant unconstitutional we find distinguishable on the grounds that the holdings are based on the premise that the actions of the lower tribunal are ministerial, executive or administrative in nature. *See City of Aurora* v.

*Schoberlein*, 230 Ill. 496, 82 N.E. 860 (1907); *State ex rel. McGinnis* v. *Police Civil Serv. Comm'n*, 253 Minn. 62, 91 N.W.2d 154 (1958); *City of Meridian* v. *Davidson*, 211 Miss. 683, 53 So.2d 48 (1951). Others which reject de novo review but uphold a more limited review we find unpersuasive.[4] On the other hand, statutory grants of de novo review have been upheld in several states when attacked on constitutional grounds. *Ex parte Darnell*, 262 Ala. 71, 76 So.2d 770 (1954) (dismissal of city detective); *Matanuska-Susitna Borough* v. *Lum, supra* (dismissal of tenured teacher); *Civil Serv. Comm'n* v. *Matlock, supra* (chief of police reduced in rank); *Osborne* v. *Bullitt County Bd. of Educ.*, 415 S.W.2d 607 (Ky. 1967) (discharge of school teacher); *Francisco* v. *Board of Directors, supra* (discharge of school teacher). In each of these cases the courts found the de novo review did not violate the separation of power doctrine.

Once the disciplinary hearing is characterized as a judicial function, the breadth of remedies that the Legislature has bestowed upon the Superior Court is immaterial. Thus, we would parenthetically point out that any questions as to this aspect of the Act pertain to legislative wisdom rather than the statute's constitutionality.

From the foregoing analysis we conclude that the de novo review afforded in §45-20-1.1 is constitutional and does not violate the doctrine of separation of powers.

We answer the question certified to us in the negative.

Mr. Justice Doris, dissenting. I respectfully dissent. We observed in *Creditors' Service Corp.* v. *Cummings*, 57 R.I. 291, 300, 190 A. 2, 8 (1937), that:

---

[4] *See In re Fredericks*, 285 Mich. 262, 280 N.W. 464 (1938); *Fire Dept.* v. *City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664 (1949).

"The constitutional distribution of the powers of government is at once a grant of specific power to each department and a prohibition to the other two with reference to that same power."

It is an established and fundamental principle of constitutional law that one department of government cannot interfere with or encroach on either of the other departments. *In re Rhode Island Bar Ass'n,* 106 R.I. 752, 263 A.2d 692 (1970). *G. & D. Taylor & Co.* v. *Place,* 4 R.I. 324 (1856). Thus, it is quite clear that as a general principle, the courts may not constitutionally be given any functions which are not judicial. The exact boundary between judicial and nonjudicial matters is difficult to define with certainty. This court acknowledged the problem in *G. & D. Taylor & Co.* v. *Place, supra,* where we said:

"In some cases, it is difficult to draw and apply the precise line separating the different powers of government which, under our political systems, federal and state, are, without exception, carefully distributed between the legislative, the executive, and the judicial departments. To some extent, and in some sense, each of the powers appropriated to different departments in the above distribution, must be exercised by every other department of the government, in order to the proper performance of its duty." *Id.* at 332.

Since the essence of the problem in this case is to give the term judicial its proper scope, it is important to recognize that the meaning of the term is apt to vary according to the context in which it is used. Here we are concerned only with the term as it is used to describe functions which may properly be performed by a court. Courts have, using the term judicial in *other* senses, described police administrative personnel boards as being judicial in nature. For the reasons that follow, I do not consider these cases determinative of the present constitutional question.

## I. *Judicial as it is used in contexts other than the separation of powers.*

A body may be deemed to carry out judicial functions in one sense if it is under a duty to follow procedures which are normally thought of as judicial in nature. In *Aniello* v. *Marcello,* 91 R.I. 198, 162 A.2d 270 (1960), we held that a statute empowering an administrative agency to remove a public employee "for cause" indicated a legislative intent that the agency act "in a judicial, or at least in a quasi-judicial, capacity." *Id.* at 207, 162 A.2d at 274. By this we meant, the opinion goes on to explain, the employee must be given a hearing, and substantial grounds for dismissal established by legally sufficient evidence must be produced. But we did not say that a court could constitutionally perform the agency's function. A legislative direction to an agency to follow certain procedures cannot enlarge the constitutional power of the judiciary. As was said in a related case involving the removal of teachers:

"The field of judicial inquiry is not enlarged in the case of discharge of teachers for cause, essentially an executive function, by the fact that a legislative act requires such court trappings as formal charges, notice, and a hearing." *State ex rel, Ging* v. *Board of Educ.,* 213 Minn. 550, 570, 7 N.W.2d 544, 555 (1942).

Another case using the term judicial in the above sense is *Gartsu* v. *Coleman,* 82 R.I. 103, 106 A.2d 248 (1954). There, a captain in the Woonsocket Police Department was demoted to patrolman by the Board of Police Commissioners of that city. No notice or hearing was given to him. Prior judicial interpretation of the governing statute established that notice and hearing were required if the board acted in a judicial, as opposed to administrative, capacity in ordering the demotion. This court held that since the board's action was intended as punishment, it was acting in a judicial capacity and therefore was re-

quired to give the captain notice and a hearing. Judicial, in this sense, has nothing to do with the separation of powers of government. This court did not characterize the decision of the police commissioners as judicial for the purpose of determining whether a court could undertake to make that decision itself. The question of a court making decisions that were the sole preserve of the executive was not at issue. This court in *Gartsu* was concerned solely with whether the action of the commissioners had been sufficiently judicial to necessitate certain procedural safeguards. That we deemed the police commissioners' action judicial in the above sense does not bear, in my opinion, on whether it would be judicial in the constitutional sense relevant to the inquiry here. *See also Morgan* v. *Thomas,* 98 R.I. 204, 200 A.2d 696 (1964); *Hanna* v. *Board of Aldermen,* 54 R.I. 392, 173 A. 358 (1934).

The terms judicial or quasi-judicial are used in a second sense to describe functions which, although performed by the executive or legislative branch, are nonetheless subject to a limited review in the courts by a writ of certiorari. *Riccio* v. *Town Council,* 109 R.I. 431, 286 A.2d 881 (1972); *Carroll* v. *Goldstein,* 100 R.I. 550, 217 A.2d 676 (1966); *Beauregard* v. *Town Council,* 82 R.I. 244, 107 A.2d 283 (1954). In *Carroll* v. *Goldstein, supra,* the issue before this court was whether a Providence police officer could obtain review of his dismissal by way of certiorari. We said there that:

> "[The commissioner] ordered a hearing, judicial in nature, and the decision resulting therefrom being unfavorable to the accused is a proper subject for review in this court by way of certiorari. *Id.* at 556, 217 A.2d at 680.

We did not decide that the action of the commissioner was judicial in the sense that it could be made by a court in the first instance; we decided only that his action was sufficiently judicial to meet the common law requirement

of a limited review by certiorari. The two are not the same. If they were, it would follow that a court could constitutionally hear de novo all of the administrative decisions which are presently subject to review by certiorari. I cannot accept such an expansive view of the judicial role. This distinction was recognized by the court in *Sellin* v. *City of Duluth*, 248 Minn. 333, 80 N.W.2d 67 (1956). There, de novo revew of the dismissal of a public employee was held unconstitutional on the ground that such review was a nonjudicial function, despite the fact that the dismissal was sufficiently judicial to support review by certiorari:

> "[T]he act of removing an employee of the fire department for cause is primarily administrative and, although judicial in a sense, is not an act of such a nature that it requires performance by the judicial branch of the government *or permits an appeal thereto.*" *Id.* at 337, 80 N.W.2d at 70-71.

## II. *Judicial as the term applies to the constitutional separation of powers.*

Whether a given function is to be classified as judicial for the purpose of determining whether a court may constitutionally exercise that function is largely a matter of history and practicality. One treatise writer has stated the test as follows:

> "Whether a function imposed upon a court is 'nonjudicial' and, therefore, in violation of the separation of powers principle, cannot be determined by applying abstract definitions of legislative and judicial functions. The validity of the imposition must rest upon practical considerations relevant to the efficient operation of government with due regard, of course, to the limitations upon the respective functions of the two branches fixed by tradition." 2 Cooper, *State Administrative Law* at 680 (1965), quoting *Boyle* v. *City of Bend*, 234 Ore. 91, 380 P.2d 625 (1963).

The distinction has also been stated (with reference to certiorari but equally applicable here) as follows:

"Perhaps as good a criterion as any for determining what is judicial is merely to compare the action in question with the ordinary business of courts: that which resembles what courts customarily do is judicial, and that which has no such resemblance is nonjudicial." 3 Davis, *Administrative Law* §24.02 at 395 (1958).

Another consideration is whether the exercise of the function would "[involve] the judiciary in situations that might reflect on the judges' reputations for independence and freedom from politics." 1 Cooper, *State Administrative Law* at 27 (1965).

De novo review by the Superior Court of a police personnel review board decision is, using the above criteria, undoubtedly a nonjudicial function. It is highly impractical to expect a police department to function efficiently and to have coherent policies if those in charge of it are unable to determine who is employed and how they are disciplined. Personnel management is a highly complex function. It is not normally performed by the judiciary. Intimate knowledge of the day to day affairs of the department is crucial to intelligent, consistent administration. To expect a court to make decisions without the benefit of such knowledge, or on the other hand to expect the court to acquire such knowledge each time an appeal comes up, is not reasonable.

Professor Davis sets out in his treatise the rationale for not allowing de novo review of personnel decisions:

"The reason for the holdings that nonjudicial functions may not be reviewed de novo is not that a court is lacking in qualification to make findings of fact from conflicting evidence but that a court may be lacking in qualification to take over the discretionary power. For instance, a typical civil service commission, which spends full time on personnel problems,

> may be better qualified than a typical court to exercise discretion on problems of personnel management, such as deciding whether to discharge, suspend, demote, reprimand, or warn a public employee who is found guilty of misconduct." 4 Davis, *Administrative Law* §29.10 at 185-86 (1958).

Under the American constitutional system, not only is it true that the judiciary may not, of its own authority, exercise powers not judicial, but in the absence of constitutional provisions to the contrary, it is also true that the Legislature may not confer or impose such powers on the judiciary. *Opinion of the Justices*, 336 Mass. 765, 142 N.E.2d 770 (1957). Our court was confronted by a similar set of facts in the case of *Simmons* v. *Town Council*, 112 R.I. 522, 312 A.2d 725 (1973), where the chief of police, Simmons, was dismissed by the town council after a hearing on a charge of insubordination. The plaintiff appealed to the Superior Court where the trial justice affirmed the dismissal. He then filed a notice of appeal in this court. In seeking to be reinstated to his position of chief of police, the plaintiff sought review by revoking the provisions of G.L. 1956 (1970 Renactment) §45-20-1.1.

It marked the first time a police officer sought appellate review of the Superior Court's order under the provisions of §45-20-1.1. We treated the plaintiff's notice of appeal as a petition for writ of certiorari because we noted that the legislation which was enacted in 1968 did not provide any vehicle for a judicial review of the actions taken in the Superior Court. However, the question raised in *Simmons* v. *Town Council, supra,* is distinguishable from the present case, because in *Simmons* the court was not confronted with a challenge to the constitutionality of §45-20-1.1.

Although the precise question has never been presented to this court, our prior decisions imply very strongly that de novo review of a personnel review board decision is a

nonjudicial function. In *Kelley* v. *City Council,* 61 R.I. 472, 1 A.2d 185 (1938), the issue before this court was whether the city council had given a discharged policeman a fair hearing. In describing the function of the council we said it was primarily legislative.

> "It is true that to a certain extent the hearing of charges against a police officer by a city council partakes of the nature of a trial, and it is beyond question that the accused officer is entitled to a fair and impartial hearing. The city council, when sitting as the triers of the charges, as it did in the instant case, was acting as a quasi-judicial body, and, therefore, was bound by the fundamental principles that are binding on all judicial bodies. *Hanna* v. *Board of Aldermen,* 54 R.I. 392, 396. But the city council, in the performance of such disciplinary duties, is not a court. It always retains its primary character of a legislative and administrative tribunal, and its action must be examined in view of the purposes for which it is created and organized." *Id.* at 481, 1 A.2d at 189.

An even more explicit characterization of the personnel review process appears in *Donahue* v. *Town Council,* 25 R.I. 79, 54 A. 933 (1903). There the issue was whether a statute which allowed appeals of town council decisions applied to the discharge of a policeman by the Cumberland Town Council. In deciding that no appeal lay, we said:

> "The definition of the qualifications of a police officer is a legislative, not a judicial, function; and the settling the qualifications is as much a part of the act of the town council as the decision whether or not the person in question possesses them. From the nature of this power, no appellate court can exercise it. The appointment and removal of subordinate officers employed in the administration of the town government involves so large an element of personal choice that it must of necessity be left to local authority." *Id.* at 80-81, 54 A. at 934.

Establishing minimum personnel requirements has like-

wise been held to be within the legislative discretion of a city council. *Beaulieu* v. *Walsh*, 89 R.I. 295, 152 A.2d 538 (1959).

Many courts have held statutes granting de novo review of personnel decisions regarding policemen and firemen to be unconstitutional. *City of Aurora* v. *Schoberlein*, 230 Ill. 496, 82 N.E. 860 (1907); *State ex rel. McGinnis* v. *Police Civil Serv. Comm'n*, 253 Minn. 62, 91 N.W.2d 154 (1958); *City of Meridian* v. *Davidson*, 211 Miss. 683, 53 So.2d 48 (1951). Other courts, in order to avoid declaring a statute unconstitutional, have narrowly construed the term "de novo review" to mean review on the record only for arbitrariness. *DeMond* v. *Liquor Control Comm'n*, 129 Conn. 642, 30 A.2d 547 (1943); *State Bd. of Medical Registration & Examination* v. *Scherer*, 221 Ind. 92, 46 N.E. 2d 602 (1943); *In re Ditko*, 385 Pa. 435, 123 A.2d 718 (1956); *Fire Dept.* v. *City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664 (1949).

Accordingly, I would hold the statute in question to be an unconstitutional delegation of a nonjudicial function.

*Charles H. Gifford III, Julius C. Michaelson,* Attorney General, *Richard B. Woolley, Special* Asst. Attorney General, for plaintiff.

*Richard R. DelSesto,* Asst. Town Solicitor, *Bernard F. McSally,* for defendants.